ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
Michael A. Geibelson, Bar No. 179970
MAGeibelson@rkmc.com
Matthew D. Taggart, Bar No. 227482
MDTaggart@rkmc.com
2049 Century Park East, Suite 3400
Los Angeles, CA  90067-3208
Telephone:    310-552-0130
Facsimile:     310-229-5800

Attorneys for Defendant
Best Buy Co., Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SONY VAIO COMPUTER NOTEBOOK TRACKPAD LITIGATION | Case No.  09-cv-2109-BEN-RBB<br><br>**DEFENDANT BEST BUY'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:     June 21, 2010<br>Time:    10:30 a.m.<br>Judge:   Hon. Roget T. Benitez<br>Ctrm:    Three |

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A.  Plaintiffs' Express Warranty Claims Fail As A Matter of Law Because Their Own Allegations Demonstrate That Best Buy Repaired Their Computers Each and Every Time Repairs Were Requested ................................................................... 2

        1.  Mr. Flynn's Notebook Was Repaired Each and Every Time Requested ..... 3

        2.  Ms. Egner Never Gave Best Buy An Opportunity To Repair Or Replace Her Computer ............................................................................................... 5

    B.  Plaintiffs' Claims for Breach of the Implied Warranty of Merchantability Fail Because Plaintiffs Admit The Purported Trackpad Defect Did Not Prevent Them From Normal Use of their Notebooks ....................................................................... 6

    C.  Plaintiffs Cannot State a Claim for Breach of the Implied Warranty of Fitness for a Particular Purpose Because They Allege Neither a "Particular Purpose," Nor Best Buy's Knowledge That They Were Relying on It to Provide The Notebooks for Such a Purpose ................................................................................................................. 7

    D.  Ms. Egner Has No Claim Against Best Buy Because She Is Still Within the One-Year Coverage of Sony's Manufacturer's Warranty, and Lacks Standing Because She Has Not Suffered Any Injury ............................................................................ 8

    E.  Plaintiffs' Magnuson-Moss Claims Necessarily Fail Because Plaintiffs Have Failed to State a Claim For Breach of Express or Implied Warranty ...................... 9

III. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page

**Cases**

*American Suzuki Motor Corp. v. Superior Court*,
  44 Cal. App. 2d 526 (1995) .................................................................................................... 7

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .................................................................................................................. 8

*Daugherty v. Am. Honda Motor Co.*,
  51 Cal. App. 3d 118 (2006) .................................................................................................... 9

*Dominguez v. American Suzuki Motor Corp.*,
  72 Cal. App. 3d 354 (2008) .................................................................................................... 4

*Farris v. Coleman*,
  121 F. Supp. 2d 1014 (N.D. Miss. 2000) ............................................................................... 8

*Ibrahim v. Ford Motor Co.*,
  263 Cal. App. 3d 64 (1989) .................................................................................................... 5

*Keith v. Buchanan*,
  173 Cal. App. 3d 13 (1985) .................................................................................................... 7

*Mocek v. Alfa Leisure, Inc.*,
  7 Cal. App. 3d 546 (2003) ...................................................................................................... 2

*Robertson v. Fleetwood Travel Trailers of Cal.*,
  50 Cal. App. 3d 731 (2006) .................................................................................................... 3

*Silvio v. Ford Motor Co.*,
  135 Cal. App. 2d 846 (2003) .............................................................................................. 2, 4

*Tietsworth v. Sears, Roebuck & Co.*,
  No. 09-CV-00288 JF (HRL) 2009 WL 3320486 (N.D. Cal. Oct 13, 2009) ........................... 7

*Zabit v. Feretti Group, USA*,
  No. C 06-1252 JSW, 2006 WL 3020855 (N.D. Cal. Oct. 23, 2006) ...................................... 9

**Statutes**

Cal. Civ. Code § 1793.2(d)(1) .................................................................................................. 2, 5

UCC § 2-314 ................................................................................................................................. 6

**Other Authorities**

18 Williston on Contracts § 52:76 (4th ed.) ................................................................................. 6

# I.

# **INTRODUCTION**

Plaintiffs' only claims against Best Buy are for breach of express and implied warranties. Yet, these warranty claims must be dismissed because Plaintiffs' own allegations show that Best Buy fully performed in accordance with its Performance Service Plans and Geek Squad Plan (characterized as express warranties for purposes of this Reply).

Plaintiff Flynn plainly alleges that his computer was successfully repaired each time it was presented to Best Buy. As a result of these repairs, he was able to use his computer for more than two years – from December of 2007 to at least September of 2009. Moreover, Mr. Flynn does not allege that he specifically complained to Best Buy of the allegedly defective trackpad until April of 2009. He experienced no further problems until September of 2009. As a matter of law, Mr. Flynn has not pled and cannot plead that Best Buy failed to repair or replace his computer after a reasonable number of attempts.

Plaintiff Egner never even presented her computer to Best Buy for repair. Thus, as a matter of law, Best Buy cannot be found to have failed to repair or replace her computer. Furthermore, since Ms. Egner only purchased her computer in December of 2009, and Best Buy's warranties disclaim coverage during the term of Sony's one-year limited warranty, Best Buy's repair and/or replacement obligations have yet to accrue.

Plaintiffs fail to state a claim for breach of the implied warranty of merchantability because their allegations show that they were able to use their computers for their normal purpose despite the alleged trackpad problems, even if these problems made their computing experience less than ideal. Frankly, they never allege that they were impaired from using their computers for their intended purpose, only that they experienced problems which, according to their own allegations, Best Buy either fixed or was never given a chance to fix.

Plaintiffs also fail to state a claim for breach of the implied warranty of fitness for a particular purpose because they never allege any legally cognizable "particular purpose" for which they sought to use their computers. Their alleged "particular purpose" is exactly the same as their intended purpose: mobile computing.

60372207.3 - 1 - 
09-CV-2109
BEST BUY'S REPLY
IN SUPP OF MOTION TO DISMISS

1   Finally, because the Magnuson-Moss Warranty-Federal Trade Commission Improvement
2   Act depends upon a viable claim under state law, Plaintiffs' Magnuson-Moss claims against Best
3   Buy must be dismissed as well.

## II.

## ARGUMENT

**A.   Plaintiffs' Express Warranty Claims Fail As A Matter of Law Because Their Own Allegations Demonstrate That Best Buy Repaired Their Computers Each and Every Time Repairs Were Requested**

Plaintiffs' express warranty claims fail as a matter of law because they do not allege that Best Buy failed to perform repairs in accordance with the terms of the alleged express warranty. California's Song-Beverly Consumer Warranty Act provides a lengthy and detailed scheme requiring manufacturers to repair after breach of an express warranty; the buyer has a concomitant duty to allow a reasonable number of attempts for repair before it can demand a replacement of the goods, or reimbursement. Cal. Civ. Code § 1793.2(d)(1); *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402 (2003). Section 1793.2(d)(1) provides that "if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less the amount directly attributable to use by the buyer prior to the discovery of the nonconformity." Cal. Civ. Code § 1793.2(d)(1).

While Plaintiffs are correct that the reasonableness and the number of attempts by a manufacturer to repair consumer goods is normally a question of fact for a jury, no such inquiry is required unless the manufacturer actually failed to fix the problem. In this case, Flynn himself alleges that Best Buy made the requested repairs. Courts have dismissed express warranty claims as a matter of law where, as here, the defendant did not fail to make requested repairs within a reasonable number of attempts. *See, e.g., Silvio v. Ford Motor Co.*, 109 Cal. App. 4th 1205, 1208-09 (2003) (a single opportunity to repair vehicle did not meet statutory threshold so there was no need for trier of fact to determine its reasonableness, even where defect was allegedly life-

threatening). *See also Robertson v. Fleetwood Travel Trailers of Cal.*, 144 Cal. App. 4th 785 (2006) (at a minimum there must be more than one opportunity to fix the nonconformity).

### 1. Mr. Flynn's Notebook Was Repaired Each and Every Time Requested

As was emphasized in the Motion, Best Buy repaired Mr. Flynn's VAIO Notebook each and every time he alleges that he sought repairs:

**Late December 2007 or early January 2008:** After purchasing his notebook on December 5, 2007, Mr. Flynn took his computer back to Best Buy in late December 2007 or early January 2008 and, as he alleges, "Best Buy reinstalled the software on his Sony VAIO Notebook, including reinstalling the Vista operating software," and "Best Buy's Geek Squad technicians also restored Mr. Flynn's Sony VAIO Notebook to its original factory settings." Compl. ¶ 39 at 16:18-23.

**January 2008:** Flynn alleges he still experienced problems and returned to Best Buy in January of 2008, at which point "Best Buy again reinstalled software on Mr. Flynn's Sony VAIO Notebook and restored the computer to its factory settings." *Id.* ¶ 40 at 16:24-28.

**Undetermined:** Sometime after these repair attempts, at some unspecified date, Flynn alleges he again returned to Best Buy and "Best Buy's 'Geek Squad' examined the computer, restored software, and reset factory settings." *Id.* ¶ 41 at 17:2-6.

**April 2009:** Then, *more than a year later*, Flynn alleges he returned to Best Buy to have the VAIO trackpad repaired and, in accordance with its warranty, "Best Buy shipped Mr. Flynn's defective Sony VAIO Notebook to its warranty repair center in Georgia" and Sony replaced the touchpad board. *Id.* ¶ 43-44 at 17:16-26. Indeed, Mr. Flynn alleges that, following these repairs, the notebook "operated normally for a few months." *Id.* ¶ 45 at 18:13-15.

**September 2009:** Finally, nearly *six months later*, Flynn took his computer to Best Buy to have the trackpad repaired, and Best Buy performed repairs he requested. *Id.* ¶ 48 at 19:13-16.

A closer examination of the Complaint reveals that Mr. Flynn does not even allege each of the foregoing repairs alleged actually related to the trackpad at the center of his putative class action complaint. A few weeks after his initial purchase, he said he had "frustrating technical problems, including mouse and cursor errors and total machine lockup." Compl ¶ 35 at 15:26-28.

1   The allegations regarding the first round of repairs, in December 2007 or January 2008, do not
2   mention the allegedly defective trackpad at all, but, rather, indicate that Flynn took his computer
3   in and Best Buy reinstalled software and restored his computer to its factory settings. Compl. ¶
4   39 at 16:16-23.  The second repair, in January 2008, also consisted of reinstalling software and
5   resetting factory settings.  Compl. ¶ 40 at 16:24-17:1.

6   In fact, according to Mr. Flynn's own allegations, it was not until April of 2009 that Mr.
7   Flynn claims he specifically sought to have the *trackpad* repaired, at which point he admits that
8   Best Buy "replaced the Sony VAIO Notebook's touchpad board." Compl. ¶ 44 at 17:22-26. The
9   repair worked, and the computer functioned normally. *Id.* ¶ 45 at 18:13-15. The Complaint only
10  alleges one additional repair after this point, in September 2009, the results of which are not even
11  alleged. *See id.* ¶ 46 at 18:16-18.

12  The Complaint concedes that the first time repairs to the trackpad were expressly
13  requested, in April 2009, Best Buy solved the problem. Even if the Court assumes that the
14  alleged September 2009 repair attempt failed – something that Mr. Flynn has conspicuously
15  failed to allege – the Complaint fails as a matter of law to allege that Best Buy failed to repair or
16  replace the alleged trackpad problem after a reasonable number of attempts. *See Silvio, supra*,
17  109 Cal. App. 4th at 1208-09.

18  Finally, Section 1793.2, subdivision (d)(1), requires a manufacturer who cannot repair
19  consumer goods after a reasonable number of attempts to "either replace the goods or reimburse
20  the buyer in an amount equal to the purchase price paid by the buyer...." Mr. Flynn does not
21  allege that he was denied replacement or reimbursement of the cost of his computer by Best Buy,
22  nor can he.  As explained, his computer was successfully repaired.  Mr. Flynn did not seek
23  reimbursement, for the obvious reason that he had no basis for doing so and apparently wanted to
24  keep the use of his computer rather than return it. *Cf. Dominguez v. Am. Suzuki Motor Corp.*, 160
25  Cal. App. 4th 53 (2008) (affirming summary judgment in favor of defendant Suzuki after it
26  offered to repurchase allegedly defective motorcycle six weeks after receiving reimbursement
27  demand from attorney).

28

### 2. Ms. Egner Never Gave Best Buy An Opportunity To Repair Or Replace Her Computer

Ms. Egner has failed to state a claim against Best Buy for breach of warranty because she never gave Best Buy any opportunity to repair or replace her computer. After she bought her notebook on December 11, 2009, Egner alleges that she contacted Sony on approximately nine separate occasions regarding problems with her VAIO Notebook, most recently in February of this year. Compl. ¶¶ 51-72. But she does not, and cannot, allege that Best Buy failed to repair her computer within a reasonable number of attempts because she never gave Best Buy any opportunity to fix the problems of which she complains.

Close inspection of the Complaint shows that Egner's factual allegations involving Best Buy are only two: (1) that she was informed by telephone sometime after January 29, 2010 (correctly) that she was ineligible for a refund under the company's return policy because she was outside the 30-day window, and (2) that Best Buy refused to replace her computer on February 19, 2010 when she called to complain about Sony's ineffective repair attempts. Compl. ¶ 61 at 22:11-13, ¶ 64 at 23:19-26.

The first allegation is irrelevant and immaterial on its face and has nothing to do with any express warranty. The second allegation does not give rise to an express warranty claim because, as a matter of law, Best Buy is not required to replace a computer that it has never been given an opportunity to repair. Cal. Civ. Code § 1793.2(d)(1). And, as noted in Best Buy's Motion, Egner's express warranty did not entitle her to a replacement computer until after three unsuccessful repair attempts by Best Buy. Mot. at 4:20-27 & RJN Ex. "B" at 12.

Plaintiffs' claim in their Opposition that Sony's failed repair attempts require Best Buy to replace a computer it never had a chance to fix finds no support in the Consumer Warranty Act. Their citation to *Ibrahim v. Ford Motor Co.* for the proposition that Sony's repair attempts count toward Best Buy's three-attempts provision is misleading and false. *Ibrahim* simply says that in determining whether a "reasonable number of attempts" has been made under the Consumer Warranty Act, repair efforts of the manufacturer's authorized agents, specifically automobile dealers in the case of auto manufacturers, count against the manufacturer itself. 214 Cal. App. 3d

1  878 (1989).  It does *not* hold that authorized service facilities are liable to replace equipment that

2  they've never been given an opportunity to repair.  It certainly does not hold that efforts of a

3  manufacturer to fix problems with its own product count as repair attempts for purposes of a

4  third-party's express warranty.

5  **B.    Plaintiffs' Claims for Breach of the Implied Warranty of Merchantability Fail**

6  **Because Plaintiffs Admit The Purported Trackpad Defect Did Not Prevent Them**

7  **From Normal Use of their Notebooks**

8  To make out a claim for breach of the implied warranty of merchantability, Plaintiff's

9  must plead that the purported defect prevented them from using the product for its intended

10 purpose.  Under UCC Section 2-314,[1] merchantability requires that goods be "fit for the ordinary

11 purposes for which such goods are normally used."  As Williston on Contracts explains:

> As a general principle, and subject to the seller having undertaken a greater responsibility, the implied warranty of merchantability requires only that the goods be fit for their ordinary purpose, not that they be perfect or in perfect condition, or be outstanding or superior, or of the best or highest quality. Nor need they be free of minor defects, or capable of precisely fulfilling the expectations of the buyer. Stated otherwise, a product that performs its ordinary functions adequately does not breach the warranty merely because it does not function as well as the buyer would like, or even as well as it could.

18 18 Williston on Contracts § 52:76 (4th ed.).

19 While they allege that "the Defect renders the VAIO Notebooks useless for their intended

20 purpose of mobile computing," Plaintiffs do not say that the mouse or cursor issues of which they

21 complain rendered their computers immobile, or prevented them from computing.  *Tietsworth v.*

22 *Sears, Roebuck & Co.,* No. 09-CV-00288 JF (HRL), 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009)

23 (dismissing implied warranty claims because plaintiffs could still use the product for its intended

24 purpose, even though the product's performance was reduced because of a defect).  As discussed

25 in detail in Part II.A.1, above, Mr. Flynn has been using his computer regularly over the past

26 several years, and although he complains of "frustrating technical problems, including mouse and

---

[1] Section 2-314 has been adopted in California as Civil Code Section 1792, in Florida as Statute 672.314(2), and in New Jersey as Statute 12A:2-314.

1  cursor errors and total machine 'lockup,'" these are common problems that people often
2  experience while computing.  And Best Buy satisfactorily fixed these problems each time Flynn
3  brought them to its attention.  Further, according to Flynn's own allegations, he did not seek to
4  have the trackpad repaired until more than a year after he first bought the computer, in April
5  2009.

6  Ms. Egner, for her part, just bought her computer last December, three short months
7  before filing her class action Complaint.  Egner's computer was shipped for repair for the first
8  time at the end of January, and Egner got it back on February 19, 2010, barely a month before her
9  class action Complaint was filed.  Compl. ¶ 63 at 23:15-17.

### C. Plaintiffs Cannot State a Claim for Breach of the Implied Warranty of Fitness for a Particular Purpose Because They Allege Neither a "Particular Purpose," Nor Best Buy's Knowledge That They Were Relying on It to Provide The Notebooks for Such a Purpose

To make out a claim for breach of the implied warranty of fitness for a particular purpose, Plaintiffs must allege that "at the time of purchase [Best Buy] knew or had reason to know that [Plaintiffs] intended to use the product for a particular purpose," and that "at the time of purchase, [Best Buy] knew or had reason to know that [Plaintiffs] w[ere] relying on [Best Buy's] skill and judgment to select or furnish a product that was suitable for the particular purpose."  CACI No. 1232 (2010); *Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (1985).  As the statute implies, "a 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purpose for which goods are used are those envisaged in the concept of merchantability, and go to uses that are customarily made of the goods in question."  *American Suzuki Motor Corp. v. Superior Court*, *supra*, 37 Cal. App. 4th at 1295 n.2.

In Paragraph 144 of Count Five, Plaintiffs allege that their particular purpose was "mobile computing."  Compl. ¶ 144 at 38:5-6.  Yet, as Best Buy's Motion notes, "mobile computing" is not a particular purpose at all.  Computing, or mobile computing, is obviously the ordinary purpose for which notebook computers are used.  Mot. at 9:14-20.  Indeed, the Complaint itself

1  makes this point in that Plaintiffs also refer to mobile computing as the regular "intended use" of
2  their notebooks. *See* Compl. ¶ 34 at 15:22-24 ("Mr. Flynn purchased his Sony VAIO Notebook,
3  believing it to be reasonably fit for its intended purpose, *i.e.,* mobile computing, as well as for
4  business."); ¶ 157 (Count Five) ("By placing its VAIO Notebooks in the stream of commerce,
5  defendants impliedly warranted its VAIO Notebooks were reasonably fit for their intended use.").
6  "Business," whatever that is meant to signify, likewise does not qualify as a particular purpose.

7       In sum, Plaintiffs have not come close to pleading that they intended to use their
8  notebooks for any peculiar or special purpose beyond the ordinary use for such goods, let alone
9  that Best Buy knew that Plaintiffs relied upon it to select a product for such a purpose. *See, e.g.,*
10 *Farris v. Coleman*, 121 F. Supp. 2d 1014, 1018 (N.D. Miss. 2000) (trucker who experienced fire
11 in his truck allegedly resulting from thermal electric refrigerator could not establish breach of
12 implied warranty of fitness for a particular purpose, where trucker purchased refrigerator to keep
13 food and beverages cold, the ordinary purpose for which a refrigerator is used).  Their Opposition
14 does not address this argument, and thereby concedes the point.

15 **D.   Ms. Egner Has No Claim Against Best Buy Because She Is Still Within the One-Year**
16      **Coverage of Sony's Manufacturer's Warranty, and Lacks Standing Because She Has**
17      **Not Suffered Any Injury**

18      Ms. Egner has failed to state a claim for express warranty against Best Buy because her
19 Best Buy warranty expressly disclaims coverage during her one-year express warranty from
20 Sony, which is valid until December 9, <u>2010</u>.  Accordingly, she also lacks constitutional standing
21 to bring her claim. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ("It goes without saying that
22 those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold
23 requirement imposed by Article III of the Constitution by alleging an actual case or
24 controversy.").  And, as Sony notes in its papers, Egner's exclusive remedies with regard to Sony
25 are repair or replacement of her Notebook, at Sony's option, because Sony has a legal right to
26 repair or replace the product during the warranty period.

27      Even if there is a defect in workmanship and/or material covered by Sony's warranty, the
28 plain language of the Best Buy warranty makes clear that Best Buy's repair and replacement

(Left margin: ROBINS, KAPLAN, MILLER & CIRESI L.L.P. — ATTORNEYS AT LAW — LOS ANGELES)

1   obligations have not accrued yet.  Mot. at 3:14-9 ("This Plan is inclusive of the manufacturer's
2   warranty; it does not replace the manufacturer's warranty, but provides certain additional benefits
3   during the term of the manufacturer's warranty.  *After the manufacturer's warranty expires, this*
4   *Plan continues to provide the manufacturer's benefits. . .*").

5   Plaintiff's Opposition does not address this argument, other than to suppose that because
6   Best Buy's warranty is "inclusive" of the manufacturer's warranty, Best Buy was legally
7   prohibited from disclaiming coverage of defects of workmanship and material during the life of
8   the manufacturer's express warranty.  No law is cited for this proposition.  *See* Opp'n at 14:7-17.
9   Best Buy was well within its rights to disclaim warranty coverage for defects in workmanship and
10  material during the one-year life of Sony's manufacturer's warranty.  *See, e.g., Zabit v. Feretti*
11  *Group*, *USA*, No. C 06-1252 JSW, 2006 WL 3020855 (N.D. Cal. Oct. 23, 2006) (White, J.) (on
12  12(b)(6), dismissing express warranty claim for engine failures against yacht manufacturer where
13  manufacturer specifically disclaimed coverage, holding "the Ferretti Limited Warranty expressly
14  excludes coverage for the engines and provides that any warranty for those engines would be
15  provided by the manufacturer, i.e., Caterpillar.").

### E. Plaintiffs' Magnuson-Moss Claims Necessarily Fail Because Plaintiffs Have Failed to State a Claim For Breach of Express or Implied Warranty

18  The Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (Magnuson-
19  Moss) simply calls for the application of state warranty law, and does not create federal
20  substantive contract law.  Hence, failure to state a warranty claim under state law necessarily
21  constitutes a failure to state a claim under Magnuson-Moss.  *Daugherty v. Am. Honda Motor Co.*,
22  144 Cal. App. 4th 824, 833 (2006).
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

# III.

# CONCLUSION

For the foregoing reasons, Best Buy respectfully requests that the Court grant its Motion to Dismiss without leave to amend.

DATED:  June 14, 2010                **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By: _____/s/  Matthew D. Taggart_____
        Matthew D. Taggart

**ATTORNEYS FOR DEFENDANT
BEST BUY CO., INC.**

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

60372207.3 — - 10 - — 09-CV-2109
BEST BUY'S REPLY
IN SUPP OF MOTION TO DISMISS

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Robins, Kaplan, Miller & Ciresi L.L.P., 2049 Century Park East, Suite 3400, Los Angeles, California 90067-3208.

On **June 14, 2010**, I caused the foregoing document described as **DEFENDANT BEST BUY'S REPLY IN SUPPORT OF MOTION TO DISMISS** to be electronically filed using the Court's CM/ECF system, which will send electronic notification to the following interested parties who are currently on the list to receive e-mail notices for this case:

- Michael A. Attanasio
  mattanasio@cooley.com,smiyajima@cooley.com

- Michelle C. Doolin
  mdoolin@cooley.com,bambrose@cooley.com

- William James Doyle, II
  bill@doylelowther.com,john@doylelowther.com

- Amber Lee Eck
  ambere@zhlaw.com

- Alreen Haeggquist
  alreenh@zhlaw.com

- John A. Lowther
  john@doylelowther.com

- Leo P. Norton
  lnorton@cooley.com,maraujo@cooley.com

- Helen Irene Zeldes
  helenz@zhlaw.com

[X]   **BY CM/ECF:** Pursuant to the Court's electronic filing and service system, a copy will be transmitted to the registered users.

[X]   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction service was made.

Executed on **June 14, 2010**, at Los Angeles, California.

LA DONNA BRYANT-WILSON

60372655.1                                              CERTIFICATE OF SERVICE

09-CV-2109 BEN (RBB)