| | |
|---|---|
| 1 | COOLEY LLP |
| | MICHAEL A. ATTANASIO (151529) |
| 2 | (mattanasio@cooley.com) |
| | MICHELLE C. DOOLIN (179445) |
| 3 | (doolinmc@cooley.com) |
| | LEO P. NORTON (216282) |
| 4 | (lnorton@cooley.com) |
| | BRADLEY A. LEBOW (240608) |
| 5 | (blebow@cooley.com) |
| | 4401 Eastgate Mall |
| 6 | San Diego, CA 92121 |
| | Telephone: (858) 550-6000 |
| 7 | Facsimile: (858) 550-6420 |
| | Attorneys for Defendant |
| 8 | SONY ELECTRONICS INC. |
| 9 | ROBINS, KAPLAN, MILLER & CIRESI L.L.P. |
| | MICHAEL A. GEIBELSON (179970) |
| 10 | (mageibelson@rkmc.com) |
| | ELIZABETH D. LE (216182) |
| 11 | (edle@rkmc.com) |
| | 2049 Century Park East, Suite 3400 |
| 12 | Los Angeles, CA 90067 |
| | Telephone: (310) 552-0130 |
| 13 | Facsimile: (310) 229-5800 |
| | Attorneys for Defendant |
| 14 | BEST BUY STORES, L.P. |
| 15 | [*ADDITIONAL ATTORNEYS ON SIGNATURE BLOCK*] |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In Re SONY VAIO COMPUTER NOTEBOOK TRACKPAD LITIGATION | | Case No. 09-CV-2109 AJB (MDD) |
| | | **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE – INSPECTION OF PLAINTIFF'S SONY VAIO NOTEBOOK COMPUTER** |
| | | Judge: Hon. Mitchell D. Dembin |
| | | Courtroom: D |

**JOINT MOTION RE: DISC. DISPUTE – INSPECTION OF PLNTF'S COMPUTER
CASE NO. 09-CV-2109 AJB (MDD)**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, CivLR 26.1, and the Honorable Mitchell D. Dembin's Chamber Rules, plaintiff Christina Egner ("Plaintiff") and defendants Sony Electronics, Inc. ("Sony") and Best Buy Stores, L.P. ("Best Buy") (collectively "Defendants") submit the following joint motion for determination of discovery dispute.

**I.  DISPUTED DISCOVERY REQUEST**

On June 16, 2011, Sony served its First Set of Requests for Production on Plaintiff. (*See* Declaration of Bradley A. Lebow in Support of Joint Motion for Determination of Discovery Dispute ("Lebow Decl."), Ex. A.) The discovery request at issue is Request for Production No. 79, which states:

> REQUEST FOR PRODUCTION NO. 79:
>
> YOUR VAIO notebook computer(s) and any peripheral computer devices YOU have used with YOUR VAIO notebook computer(s), to be produced for physical inspection and forensic imaging at the offices of its counsel, Cooley LLP, 4401 Eastgate Mall, San Diego, California 92121-1909.[1]

On August 10, 2011, Plaintiff served her responses and objections to Sony's First Set of Requests for Production. In response to Request for Production No. 79, Plaintiff stated:

> RESPONSE TO REQUEST FOR PRODUCTION NO. 79:
>
> Plaintiff incorporates by reference its General Objections. Plaintiff objects to this request because it seeks information protected by the attorney-client privilege and work-product doctrine. Plaintiff further objects to this request as unduly burdensome and the Request is intended to harass Plaintiff. Subject to and without waiving the forgoing, Plaintiff is willing to meet and confer concerning terms for inspection of Plaintiff's computer.

(Lebow Decl., Ex. B.)

On August 21, 2012, Sony and Best Buy sent plaintiff Egner a proposed protocol for inspection of Plaintiff's computer by Defendants' hardware and software consultants and a Sony technician. (Lebow Decl., Ex. D.) Defendants' proposed inspection protocol entails three parts: (1) hardware inspection detailed in the section entitled "PROTOCOL FOR OBSERVATION

---

[1] On September 25, 2012, Best Buy served its First Set of Requests for Production on Plaintiff, which included a nearly identical request. (Lebow Decl., Ex. C.)

AND INVESTIGATION OF TOUCHPAD" (the "Hardware Inspection"); (2) software forensics inspection of the computer's settings, registry files, configuration, etc., detailed in the section entitled "PROTOCOL FOR FORENSIC IMAGING" under paragraphs 1-3 and 6-10 of the "Forensic Scope" (the "Software Inspection – Part 1"); and (3) software forensics search for user created files detailed in the section entitled "PROTOCOL FOR FORENSIC IMAGING" under sections 4, 5, and 11 of the "Forensic Scope," as well as the attachments entitled, "Key Search Terms" and "Reporting." (the "Software Inspection – Part 2"). (*Id*.) In that same correspondence, Defendants also provided dates of availability for the computer inspection.

As to the Hardware Inspection, Plaintiff previously indicated that she will permit the inspection under the proposed protocol, subject to first confirming with her consultant that the procedures regarding the disassembly and re-assembly of the notebook computer are agreeable. Plaintiff has yet to provide confirmation regarding the Hardware Inspection disassembly and reassembly process, or any proposed dates for the computer inspection. As to the Software Inspection – Part 1, Plaintiff has also agreed in principle to it, again though, subject to confirming with her consultant, and further subject to Sony first advising what, if any, records it has regarding the notebook computer's software, systems, or settings from its pre-litigation limited warranty servicing of Plaintiff's notebook computer. Last, as to the Software Inspection – Part 2, Plaintiff has stated that she will not agree to this aspect of the proposed protocol, and Plaintiff will not agree to conduct her own forensic imaging and search for documents and things as outlined in the proposed protocol. As a result of these outstanding issues, Plaintiff has continued to withhold her computer from Defendants for inspection.

**II. PARTIES' INTRODUCTORY STATEMENTS**

    **A. Defendants' Statement Concerning Why This Relevant Discovery Must Be Produced**

This action is an alleged product defect case, and it puts Plaintiff, her "product," and its performance squarely at issue. Specifically, Plaintiff alleges in the operative amended consolidated complaint that "Sony manufactured, marketed and sold VAIO Notebooks with defective trackpad input devices." (Am. Consol. Compl. [Dkt. No. 49], at ¶2.) Plaintiff further

alleges that "Sony VAIO Notebooks are defectively designed and manufactured because the trackpad component can cause the onscreen cursor to: (a) track in reverse, *e.g.* the cursor moves in a direction opposite to the user's input; (b) freeze or fail to register user input; or (c) engage in erratic behavior, *e.g.* randomly open and close windows and programs (the 'Defect')." (*Id.*) Plaintiff asserts that she purchased a Sony VAIO notebook computer with a series and model number of VGN-NW240F/P from Best Buy and that it is defective. (*Id.* at ¶8.) Plaintiff asserts her claims individually and on behalf of a putative class of all persons "who purchased defective notebook computers manufactured by Sony…during the period January 1, 2007 through the present (the 'Class Period'). (*Id.* at ¶2.) Plaintiff now objects to producing her computer for examination.

As is standard practice and is to be expected in a product defect case styled as a nationwide class action, Defendants seek – and have been seeking for almost two months – to inspect the allegedly defective product before taking Plaintiff's deposition. Plaintiff has yet to produce the computer at issue for inspection and evaluation. Although Plaintiff initially agreed – as she must – that Defendants are entitled to inspect her notebook computer because she is the named plaintiff of this putative class action and because she contends the computer is defective, Plaintiff has nevertheless refused to make it available for a reasonable inspection. Moreover, she seeks to unreasonably limit the scope of inspection. In order for Defendants to reasonably analyze and set forth their defenses to Plaintiff's claims, it is absolutely critical that Defendants have a reasonable opportunity to determine who has used the computer, how the computer has been used, when the computer has been used, and what the computer has been used for, not only since the time Plaintiff purchased the computer, but more importantly, since the time the computer was last in Sony's possession and since the time Plaintiff filed this action. Only a proper examination, as proposed by Defendants, will shed light and provide actual evidence as to whether the computer is operating properly and whether it has been appropriately maintained and used by Plaintiff.[2] Because examination is necessary and Plaintiff's grounds for delaying and

---

[2] Obviously, if Defendants are not given the opportunity to perform an examination on the computer as it was at the time this action was filed, whether because examination is refused or if

1 limiting the inspection are without support in logic or law, Defendants respectfully request that Plaintiff be ordered to produce the notebook computer for inspection in San Diego, California within 14 days, at a date and time convenient for Defendants.

As set forth in her discovery response above, Plaintiff agreed to produce her computer for inspection, but desired to meet and confer regarding the protocol for such inspection. Accordingly, Defendants devoted substantial time and effort to develop a proposed inspection protocol that was appropriate in scope under the circumstances of this case and that included safeguards for potentially private or privileged information. Defendants proposed the protocol to Plaintiff on August 21, 2012, seeking to conduct an inspection of the computer the week of September 24, 2012. Plaintiff responded on September 6, 2012 by refusing to submit to the inspection and has continued to unreasonably delay proceedings ever since.

As an initial matter, it is beyond dispute that Plaintiff's VAIO notebook computer is relevant under Rule 26 and that Defendants have the right to inspect it under Rule 34. Regardless, Plaintiff did not object to the inspection on relevance grounds, and any such objection therefore has been waived.

Plaintiff's central argument against the inspection is that Defendants already have "ample evidence" as to the alleged trackpad issue because Plaintiff alleged the existence of a defect; Sony performed pre-litigation, limited warranty servicing; and other Sony computers had trackpad "issues." This argument is specious. First, Plaintiff's allegations regarding an alleged trackpad issue are not immune to evidentiary proof. Second, a pre-litigation, limited warranty servicing is vastly different in purpose and scope than a expert inspection during litigation. Regardless, Best Buy has never had the opportunity to inspect her computer. Moreover, contrary to Plaintiff's assertion, Sony's last limited warranty servicing of her computer confirmed that her computer exhibited *no* trackpad issue. As such, Defendants are entitled to inspect her computer now for the purposes of litigation. Finally, other customer complaints about various trackpad issues do not establish that Plaintiff's computer had the trackpad issue as alleged, or that this issue was

---

the computer itself has been improperly modified or altered, Defendants may have some significant additional defenses, including spoliation claims.

identical to every other alleged trackpad issue experienced by customers. And a "Service Bulletins" does not serve as acknowledgement of a trackpad "defect;" here, the relevant "Service Bulletin" describes a potential issue which may "spontaneously" arise, and the rate of repair for touchpad issues on Plaintiff's series of VAIO computer was infinitesimal. (*See* Nov. 22, 2011 Decl. of P. Stewart [Dkt. No. 95-1], at ¶¶ 14.)

As to the Hardware Inspection, based on the parties' meet and confer efforts, Defendants understood that Plaintiff did not object to the Hardware Inspection, but refused to allow it until she first confirmed with her consultant that the disassembly and reassembly of the notebook computer will not cause "damage" to it.[3] Plaintiff's concerns are unfounded and simply a delay tactic. First, Defendants crafted their protocol with input from their consultants and in accordance with Sony's internal documents (already produced to Plaintiff in this action) that constitute instructions to Sony's own technicians regarding how to disassemble and reassemble the NW series Sony VAIO notebook computer. Plaintiff's concerns about improper disassembly and reassembly are purely speculative. Second, Defendants provided the Hardware Inspection protocol to Plaintiff over six weeks ago. Plaintiff has yet to provide the purported confirmation from her consultant or make any counterproposal on the protocol's disassembly and reassembly process, despite Plaintiff's counsel's representations to do so over two weeks ago. Defendants desire to move this case along in an effort to appropriately meet the Court's scheduling in order, and Plaintiff's unreasonable and inexplicable delays should not be tolerated any longer.[4] Third,

---

[3] In this Joint Motion, Plaintiff asserts that she is willing to agree to the Hardware Inspection if Sony would allow an "independent party" to conduct the inspection, as opposed to "Sony's technicians." As noted, this statement is at odds with Defendants' understanding of Plaintiff's current position. Moreover, in the proposed protocol and during the meet and confer process, Defendants always proposed that their experts – and not a "Sony technician" – would be conducting the inspection. (*See* Lebow Decl., Ex. D.) The proposed protocol only notes that a "Sony representative with experience will re-assemble the laptop." (*Id*.) Further, Plaintiff has never even proposed an "independent party" to perform the inspection. Regardless, for the reasons stated above, Plaintiff's proposal for using an "independent party" is entirely unnecessary.

[4] Plaintiff indicated to the Court at the last status conference that an extension of the current Scheduling Order may be necessary. But for Plaintiff's stonewalling and gamesmanship, there is no reason to delay this already three year old case any further.

| | |
|---|---|
| 1 | Plaintiff alleges that her notebook computer is already "defective" and that the defect rendered |
| 2 | her notebook computer allegedly "useless" and caused it to "no longer function." (Am. Consol. |
| 3 | Compl. [Dkt. No. 49], at ¶¶ 1-3, 27, 51-72.) Further, Defendants have agreed in the meet and |
| 4 | confer process that Plaintiff's consultant may be present for the inspection, and the protocol |
| 5 | provides that the entire process will be photo-documented. Accordingly, any speculative damage |
| 6 | concern will not result in further harm to the notebook computer or prejudice to any party. Last, |
| 7 | regardless of Plaintiff's speculative concerns, her computer will have to be disassembled and |
| 8 | reassembled to inspect the internal trackpad components. This is unavoidable. |
| 9 | As to the Software Inspection – Part 2, it is relevant and necessary to the claims and |
| 10 | defenses in this case. Defendants contend that Plaintiff's alleged issue with the trackpad was not |
| 11 | a hardware issue for which they are responsible, but rather a software, systems, user, or settings |
| 12 | issue, which is not covered under the limited warranty. Plaintiff has not stated an objection to the |
| 13 | Software Inspection Part 1, but is delaying such an inspection until (i) Sony first advises her what, |
| 14 | if any, records it has regarding the notebook computer's software, settings, or settings from its |
| 15 | pre-litigation, limited warranty servicing of Plaintiff's notebook computer; and (ii) confirmation |
| 16 | from her consultant that the protocol is acceptable. Plaintiff's grounds for delaying the inspection |
| 17 | are not valid for various reasons. Sony believes that Plaintiff's computer is not defective and was |
| 18 | not defective after servicing, and has agreed to produce whatever records it has regarding |
| 19 | Plaintiff's notebook computer in due course. The purposes of this inspection for litigation |
| 20 | purposes are clearly different from the purposes of any pre-litigation limited warranty service that |
| 21 | Sony conducted, and which revealed no issue with Plaintiff's trackpad. Regardless, Best Buy has |
| 22 | never had a chance to inspect the notebook computer, a crucial detail that Plaintiff ignores. |
| 23 | Again, Plaintiff's delays should no longer be able to block this critical and necessary inspection. |
| 24 | Last, Plaintiff objects to the Software Inspection – Part 2 on overbreadth, privacy, and |
| 25 | privileged grounds. Plaintiff's objections are inappropriate and should be overruled. Defendants |
| 26 | proposed a limited list of 13 search terms (Trackp*, Touchp*, Track pad, Touch pad, Pointer, |
| 27 | Curser, Mouse, Defect, Issue, Problem, Freez*, Fail*, and Erratic) that correspond with the |
| 28 | requests for production that Sony propounded and that Plaintiff agreed to produce documents in |

response to. Importantly, Plaintiff has not produced any documents from her computer. As Defendant's will be taking a forensic image of Plaintiff's computer in any event for Software Inspection – Part 1, Defendants proposed also searching her emails and user created files for responsive documents. The search terms are narrowly tailored to avoid potentially private or privileged documents. But as an additional protection, Defendants built in safeguards for potentially privileged documents in the protocol, and have agreed that Plaintiff may designate all emails and user created documents as "CONFIDENTIAL" under the strong two-tiered protective order entered in this case.

In sum, the proposed examination of Plaintiff's computer is not only reasonable, but necessary, and Plaintiff should be ordered to produce her computer for inspection in San Diego, California by Defendants' consultants and Sony personnel immediately so that Defendants can move forward with Plaintiff's deposition, and move forward to appropriately complete discovery in a time frame consistent with the Court's scheduling order. Defendants' proposed protocol should be adopted in its entirety.

### B. Plaintiff's Statement Regarding Basis for Objections

On June 16, 2011, Sony served Plaintiff with its First Set of Requests for Production and Other Things ("RFP"). RFP No. 79 demanded that Plaintiff produce her Sony VAIO notebook computer and any peripheral computer devices for physical inspection and forensic imaging by Sony. Although Plaintiff did not agree outright to the exam she did agree to meet and confer regarding the scope of the requested exam.[5] Declaration of Jennifer MacPherson ("MacPherson Decl.") in Response to Joint Motion for Determination of Discovery Dispute ("Joint Motion") at ¶ 3. Over a year later, on August 21, 2012, Sony presented Plaintiff for the first time with a proposed Protocol for Observation and Investigation of Touchpad ("Exam Protocol"). *Id*. at ¶ 4 and Exhibit 1 (Exam Protocol). Sony's Exam Protocol is not reasonable.

As explained below, Plaintiff objects to the Exam Protocol as seeking information that is

---

[5] Notably, contrary to Sony's assertion, in addition to plaintiff's specific objections to RFP No. 79, her general objections included an objection on grounds of relevancy. MacPherson Decl., Exh.4.

7.

JOINT MOTION RE: DISC. DISPUTE –
INSPECTION OF PLNTF'S COMPUTER
CASE NO. 09-CV-2109 AJB (MDD)

irrelevant to Plaintiff's claims and Sony's defenses, duplicative of other discovery, and as being overbroad, unduly burdensome and harassing. In addition, the Exam Protocol infringes on Plaintiff's right to privacy in association with her personal files - which contain highly sensitive medical, family, and financial information—and seeks information that is protected by the attorney-client privilege and attorney work-product doctrine.

Finally, before *any* exam can move forward, Sony *must* produce all of its internal documents and materials concerning the multiple previous repair attempts Sony performed on this laptop while in its possession at Sony's headquarters, because Sony's own documents say it twice "diagnosed and extensively tested by a team of factory trained service technicians." Exhibit 3 to MacPherson declaration. Plaintiffs have demanded these tests and diagnoses be immediately produced. Sony has not produced the documents.

Sony's Exam Protocol

The basis of Plaintiff's objection concerns the scope of the Exam Protocol. In addition to a detailed visual inspection of the exterior and interior of Plaintiff's laptop ("Hardware Inspection")[6], Sony intends to access Windows to assess operation of the touchpad in order to "[d]ocument any anomalous behavior, such as track in reverse, freeze or fail to register input, or randomly open or close windows" ("Software Inspection"),[7] as well as disassemble the entire computer in order to inspect and photograph the touchpad and the componentry that controls the touchpad ("Disassembly").[8] This portion of the exam is to be performed by a Sony technician.

Sony also intends to forensically image and examine Plaintiff's notebook ("Forensic Exam").[9] As part of the Forensic Exam Sony will, among other things: (1) document all "Windows accounts, including all administrator accounts, system accounts and user accounts," including information for each account such as when the account was created and who last used

---

[6] *See* MacPherson Decl., Exh. 1 ("Exam Protocol") at ¶¶ 1-3, 5-6 ("Initial visual inspection and evaluation") and "Forensic Scope" at ¶ 1 (Sony will document make, model, serial number of laptop and photograph exterior of laptop).

[7] *Id*. at ¶ 4 ("Initial visual inspection and evaluation").

[8] *Id*. at ¶¶ 7-30 and "Forensic Scope" at ¶ 2 (Sony to photograph hard drive).

[9] *Id*. ("Protocol for Forensic Imaging") at ¶¶ 1-11 and ("Forensic Scope") at ¶¶ 3-11.

the account, (2) use "key search terms" to "locate, identify and document any and all file(s) which contain a match" in all software (e.g., Word, Excel, Power Point, Access, Corel Word Perfect etc.), deleted files, and e-mails, (3) "[i]nvestigate and document all encrypted and/or password protected documents that are unable to be searched without retrieving the password," and (4) search and document Plaintiff's internet history, including "all websites accessed."

### Visual Hardware Inspection and Disassembly

During the meet and confer process Plaintiff agreed to Sony's conducting the proposed Hardware Inspection, as well as the Disassembly, if Sony agreed to allow an independent party, rather than a Sony technician, to conduct these exams. MacPherson Decl. at ¶ 18. Plaintiff believes an independent technician is necessary to avoid the possibility of any advertent or inadvertent manipulation by a representative of Sony that may obscure manifestation of the defect. Sony refused. *Id*.

### Software Inspection

In addition, Plaintiff agreed to the Software Inspection upon Sony first providing her with all records in Sony's possession regarding its four attempts to repair Plaintiff's computer. MacPherson Decl. at ¶ 19. The purpose of this request is to determine the extent to which the proposed exam is necessary, particularly where Sony has ample evidence in its possession regarding existence of the defect in the Sony VAIO notebooks, including Sony service bulletins. *Id*. at ¶¶ 8-16.

Sony explains the Software Inspection is necessary because "Sony believes that Plaintiff's computer is not defective and was not defective after servicing," *supra*, p. 4. However, an examination of Plaintiff's computer is not necessary to establish it manifested the alleged defect.[10] Plaintiff communicated directly with Sony on at least nine different occasions regarding

---

[10] Notably, the alleged defect is not unique to Plaintiff's computer. Sony's internal documents reveal similar problems experienced by other users of Sony VAIO notebooks. Compl. ¶ 23; SEL-0000397 to 398, (Sony service bulletin regarding touchpad issues), attached as Exhibit 2 to MacPherson Declaration; SEL-0001259 to 1323 (Sony service records); SEL-0001574 to 1579 (Sony records logging calls from customers regarding problems with their Sony VAIO keyboard/touchpad/mouse).

issues with her trackpad acting erratically, moving on its own or failing to move at all. Compl. ¶¶ 53-58, 62; *see also* Plaintiff's Response to Sony's First Set of Interrogatories ("ROG"), No. 9, attached as Exh. 5 to MacPherson Declaration. And Sony twice had Plaintiff's notebook in its possession at its headquarters to review and examine the trackpad issue. Compl. ¶¶ 62, 66; Response to ROG No. 9.

In addition, a Sony authorized onsite technician went to Plaintiff's home to try and resolve the trackpad issue (even replacing her original trackpad) and witnessed the alleged defect. Response to ROG No. 9. Further, Sony's work orders acknowledging repairs were made to Plaintiff's computer indicate her computer was "diagnosed and extensively tested by a team of factory trained service technicians." *See, e.g.*, EGNER 000006-7 and 12, attached as Exhibit 3 to MacPherson Declaration. These records, in addition to Plaintiff's response to Sony's 83 RFPs and 15 ROGs, contain information sufficient to satisfy Sony's demand for a Hardware Inspection, Disassembly and Software Inspection.[11] Further, these records *must* be produced prior to *any* inspection so the parties and the Court are informed about all the relevant changes Sony made to the computer before returning it to plaintiff Egner. And the parties and the Court are entitled to the results of Sony's "extensive" testing and diagnoses. This is basic to any inspection protocol, a fact Sony well knows.

Forensic Exam

Further, during the parties meeting and conferring Sony refused to narrow the scope of its overly broad Forensic Exam. MacPherson Decl. at ¶ 20. As such, Plaintiff cannot agree to the exam as proposed. First, Plaintiff fails to understand how in a case involving an allegedly defective trackpad, Compl. at ¶ 2, a forensic exam and imaging of her hard drive is relevant, let alone one designed to search her personal user accounts, computer files, emails, internet search history, and "all encrypted and/or password protected documents that are unable to be searched

---

[11] To the extent Sony's examination is intended to determine whether Plaintiff somehow damaged her laptop by, for example, dropping it or exposing it to water, Sony previously asked Plaintiff to describe in detail any "damage, internal, external, cosmetic or otherwise" to her notebook as part of ROG No. 14, to which Plaintiff responded that she "is unaware of any such damage."

without retrieving the password." MacPherson Decl., Exh. 1 at ¶ 10 ("Forensic Scope"). Second, most of the information Sony seeks to obtain via the Forensic Exam was previously requested by Sony as part of its 83 RFPs and 15 ROGs. To the extent relevant discovery exists, at least in the form of information contained in software (e.g., MS Word, Excel, Power Point, etc.) and/or emails, Plaintiff searched for and produced (to the extent it existed) documents and information responsive to Sony's discovery requests.

For the reasons stated above, Plaintiff objects to the exam proposed by Sony. And Sony has failed to sufficiently support the basis for its compelling an examination of Plaintiff's notebook. Before any exam can move forward, Sony must produce all of its internal documents and test results from its multiple previous repair attempts, including two repair attempts at Sony's headquarters here in San Diego. Plaintiffs have demanded these documents be produced on multiple occasions. Sony thus far has not produced them.

### III. MEET AND CONFER CERTIFICATION

In compliance with this Court's rules, counsel for Sony and counsel for Plaintiff met and conferred in person on Tuesday, September 25, 2012 (with counsel for Best Buy participating by telephone), and attempted in good faith to resolve this discovery dispute. (Lebow Decl., ¶ 8.) Prior to September 25, 2012 and since that date, the parties also engaged meet and confer efforts by telephone, e-mail, and letters to resolve this discovery dispute. (*Id*. at ¶ 6, 7, 9.) Despite their good faith efforts, the parties were not able to resolve this dispute.

| | | |
|---|---|---|
| 1 | Dated: October 22, 2012 | COOLEY LLP<br>MICHAEL A. ATTANASIO (151529)<br>MICHELLE C. DOOLIN (179445)<br>LEO P. NORTON (216282)<br>BRADLEY A. LEBOW (240608) |
| | | By: /s/ Leo P. Norton<br>　　　Leo P. Norton (216282) |
| | | Attorneys for Defendant<br>SONY ELECTRONICS INC.<br>Email: lnorton@cooley.com |
| | Dated: October 22, 2012 | ROBINS, KAPLAN, MILLER & CIRESI L.L.P.<br>MICHAEL A. GEIBELSON (179970)<br>ELIZABETH D. LE (216182) |
| | | By: /s/ Elizabether D. Le<br>　　　Elizabether D. Le (216182) |
| | | Attorneys for Defendant<br>BEST BUY STORES, L.P.<br>E-mail: EDle@rkmc.com |
| | Dated: October 22, 2012 | DOYLE LOWTHER LLP<br>WILLIAM J. DOYLE II (188069)<br>JOHN A. LOWTHER (207000)<br>JAMES R. HAIL (202439)<br><br>ZELDES & HAEGGQUIST, LLP<br>HELEN I. ZELDES (220051)<br>ALREEN HAEGGQUIST (221858) |
| | | By: /s/ John A. Lowther<br>　　　John A. Lowther (177882) |
| | | Attorneys for Plaintiff<br>CHRISTINA EGNER<br>Email: john@doylelowther.com |

**<u>CERTIFICATION REGARDING ELECTRONIC SIGNATURES</u>**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Mr. John A Lowther, counsel for Plaintiff, and Ms. Elizabeth D. Le, counsel for Best Buy, and that I have obtained Ms. Le and Mr. Lowther's authorization to affix their electronic signature to this document.

Dated: October 22, 2012

COOLEY LLP
MICHAEL A. ATTANASIO (151529)
MICHELLE C. DOOLIN (179445)
LEO P. NORTON (216282)
BRADLEY A. LEBOW (240608)

By: /s/ Bradley A. Lebow_____
    Bradley A. Lebow (240608)

Attorneys for Defendant
SONY ELECTRONICS INC.
Email: blebow@cooley.com

# CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2012, I electronically filed the following documents

**JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE – INSPECTION OF PLAINTIFF'S SONY VAIO NOTEBOOK COMPUTER**

with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record at the following listed email addresses:

- **Michael A Attanasio**
  mattanasio@cooley.com,smiyajima@cooley.com

- **Michelle C Doolin**
  mdoolin@cooley.com,bambrose@cooley.com

- **William James Doyle , II**
  bill@doylelowther.com, john@doylelowther.com

- **Amber Lee Eck**
  ambere@zhlaw.com, winkyc@zhlaw.com

- **Michael A. Geibelson**
  MAGeibelson@rkmc.com, svduenas@rkmc.com

- **Alreen Haeggquist**
  alreenh@zhlaw.com, winkyc@zhlaw.com

- **Elizabeth D. Le**
  edle@rkmc.com, lrbryant-wilson@rkmc.com

- **Bradley A. Lebow**
  blebow@cooley.com, daland@cooley.com, nernest@cooley.com

- **John A. Lowther**
  john@doylelowther.com

- **Leo P Norton**
  lnorton@cooley.com,maraujo@cooley.com

- **Aaron M. Olsen**
  aarono@zhlaw.com, winkyc@zhlaw.com

- **Helen Irene Zeldes**
  helenz@zhlaw.com

14.  **JOINT MOTION RE: DISC. DISPUTE – INSPECTION OF PLNTF'S COMPUTER**
**CASE NO. 09-CV-2109 AJB (MDD)**

| | |
|---|---|
| 1 | This document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5, all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of this document via U.S. First Class Mail. However, the undersigned is not aware of anyone who has not consented to electronic service. |

*/s/ Nicole*

Nicole Ernest
COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
Telephone: (858) 550-6000
Fax: (858) 550-6420
Email: nernest@cooley.com