UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| In re SONY VAIO COMPUTER NOTEBOOK TRACKPAD LITIGATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. AJB 09cv2109 AJB (MDD) ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL AND SETTING A CASE MANAGEMENT CONFERENCE (Doc. No. 156) |

Presently before the Court is Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel ("Motion for Class Certification"). (Doc. No. 156.)  Sony Electronics, Inc., ("Sony")[1] filed a response in opposition on April 12, 2013, (Doc. No. 174), and Plaintiffs filed a reply on May 3, 2013 (Doc. No. 184).  This motion has been fully briefed by the parties, and the Court finds it suitable for decision on

---

[1] Sony is the sole remaining defendant.  Defendant Best Buy Co., Inc. was dismissed with prejudice by order entered January 12, 2011. (Doc. No. 43.) Defendant Best Buy Stores, L.P., was dismissed with prejudice by order entered on February 7, 2013.  (Doc. No. 149.)

the briefs without oral argument.  Civ. Local R. 7.1(d)(1).  For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiffs' Motion for Class Certification.

## I.     BACKGROUND

In this action, Plaintiffs seek to certify two statewide classes: (1) all New Jersey residents who purchased a "Class Laptop"[2] from March 16, 2006 through present; and (2) all California residents who purchased a "Class Laptop" from March 16, 2006 through present.[3]  Plaintiffs propose Christina Egner and Rickey Glasco as class representatives, with Ms. Egner representing the New Jersey sub-class and Mr. Glasco representing the California sub-class.  Egner purchased her Sony VAIO NW series laptop on December 11, 2009, from a Best Buy store in Deptford, New Jersey; Glasco purchased his Sony VAIO NW series laptop on January 9, 2010, from a Fry's store in Sacramento, California.  (Pls. Mot. 25. Doc No. 156.)

## A.     Procedural Background

On November 21, 2012, Plaintiffs filed a Second Amended Consolidated Complaint ("SACC"), alleging individual and class claims for violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750 *et seq.*; the California Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200 *et seq.*; the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*; and the New Jersey Consumer Fraud Act ("NJCFA"), New Jersey Statute §§ 56:8-1 *et seq.*  Additionally, Plaintiffs bring claims for breach of express warranty;  breach of the implied warranties of fitness and merchantability; and common counts of assumpsit and declaratory relief against Sony. (Doc. No. 136.)  Sony filed its answer to the SACC on December 10, 2012.  (Doc. No. 141.) Plaintiffs filed the instant Motion for Class Certification on February 28, 2013.  (Doc. No.

---

[2] Plaintiffs define "Class Laptop" as Sony VAIO laptop series VGN-NW ("NW"), VGN-SZ ("SZ"), VGN-FZ("FZ"), VPC-EB("EB"), and VPC-F ("F").  (Pls. Mot. 1.)

[3] Plaintiffs originally sought certification of a much broader class in their Second Amended Consolidated Complaint but have narrowed its scope in the instant motion. (SACC ¶ 63 (Doc. No. 136).)  The Court finds the more limited request in the motion appropriate based on the facts alleged.

1  156.) Sony filed a response in opposition on April 12, 2013, (Doc. No. 174), and Plaintiffs

2  replied on May 3, 2013, (Doc. No. 184).

3  **B.    Plaintiff's Contentions and Claims**

4      Plaintiffs' claims surround an alleged defect in the touchpad of five different series

5  of Sony VAIO laptops – specifically, the SZ, FZ, NW, EB and F series.  (Pls. Mot. 1, n.1,

6  Doc. No. 156.) 

13  Plaintiffs assert

14  Sony knew or should have known of the defect but continued to market and sell the VAIO

15  computers without informing consumers of the existence of the defect.  (SACC ¶¶ 4, 58-60,

16  Doc. No. 136.)  Plaintiffs claim Sony misrepresented the VAIO laptops to provide "the best

17  experience possible, [with] uncompromised performance."  (*Id.* at ¶ 18.)  Sony also made

18  statements in the express limited warranty that the VAIO laptops would be "free against

19  defects in material or workmanship for one year from the original date of purchase . . . [and]

20  it would repair or replace with new or refurbished product or parts, any product or parts

21  determined to be defective."  (*Id.* at ¶ 118.)

22  **C.    The Plaintiffs**

23      The complaint was filed on behalf of two named plaintiffs located in two different

24  states.  Each purchased a Sony VAIO notebook which subsequently malfunctioned due to

25  the same alleged defect. The plaintiffs are:

26      •   Rickey Glasco, a California citizen and resident, who purchased a Sony VAIO

27          VGN-NW240F notebook.

28

09cv2109

1       •   Christina Egner, a New Jersey citizen and resident, who purchased a Sony

2           VAIO VGNNW240F/P 15.5 inch notebook computer.

## II.   DISCUSSION

### A.   Standing

In its Opposition to Plaintiff's Motion for Class Certification, Sony first questions whether Plaintiffs have the requisite standing to bring the claims alleged in the SACC. Before addressing Plaintiff's class certification, the Court finds it appropriate to address Sony's jurisdictional concerns.   Sony challenges the named Plaintiffs' standing in this matter on two grounds: (1) Plaintiffs lacks standing to bring claims relating to the four series of laptops that they did not purchase when both Plaintiffs purchased the NW series laptop only; and (2) Plaintiffs lack standing to assert CLRA, UCL, and NJCFA claims because they purchased their laptops without reliance on a misrepresentation.  (Defs. Resp. 24-25, Doc. No. 174.)

#### 1.   Legal Standard

The Supreme Court has held that "to satisfy Article III's standing requirements, a plaintiff must show: (1)it has suffered an "injury in fact" that is (a) concrete and particular-ized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC) Inc.,* 528 U.S. 167, 180 (2000) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992)).

#### 2.   Case Law on Standing to Sue For Products Named Plaintiffs Did Not Purchase

With regards to the first challenge raised by Sony, the Court considers whether the named Plaintiffs have standing as class representatives to assert claims relating to all five series of laptops identified in the SACC when they only purchased the NW series.  Relying on several cases, Sony contends that the named Plaintiffs do not have standing to assert claims arising from the four series of laptops they did not purchase (SZ, FZ, EB, and F) as they could not have been harmed by such products. (Defs. Resp. 24-25, Doc. No. 174.)

4

There is no controlling authority on this issue and courts in this circuit have reached different conclusions on similar facts.  *See Miller v. Ghirardelli Chocolate Co.,* 912 F. Supp. 2d 861, 868-69 (N.D. Cal. Dec. 7, 2012) (analyzing split).  Some courts have held "as a matter of law, that a plaintiff lacks standing to assert such claims."  *See e.g., Granfield v. NVIDIA Corp.,* 2012 WL 2847575,*6 (N.D. Cal. July 11, 2012) ("when a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."); *Johns v. Bayer Corp.*, 2010 WL 476688, at *4 (S.D. Cal. Feb. 9, 2010) (finding lack of standing for UCL and CLRA claims with respect to vitamin product plaintiff did not purchase); *Allen v. Hylands, Inc.*, 2012 WL 1656750, at *5 (C.D. Cal. May 2, 2012).  Defendant relies on these three cases to support its argument that the plaintiffs lack standing for Class Laptop series they did not purchase.

Other courts find that a plaintiff may have standing to assert claims for unnamed class members based on products she did not purchase, as long as the products and alleged misrepresentations are substantially similar.  These courts find that the "critical inquiry seems to be whether there is "sufficient similarity" between the products purchased and not purchased."  *See Astiana v. Dreyer's Grand Ice Cream, Inc.,* 2012 WL 2990766, at *11 (finding plaintiffs alleged sufficient similarity, the same kind of food product and same kind of label, for products purchased and products not purchased to grant standing).  In *Anderson v. Jamba Juice Co.*, the court held that the plaintiff, who purchased several flavors of at-home smoothie kits had standing to bring claims on behalf of purchasers of other flavors because the products were sufficiently similar and because the same alleged misrepresentation appeared on all the smoothie kits regardless of flavor. 888 F. Supp. 2d 1000, 1005-06 (N.D. Cal. Dec. 7, 2012).

Yet another group of courts find the issue to be more appropriately addressed as an assessment of typicality and adequacy of representation during the class certification stage. *Greenwood v. Compucredit Corp.,* 2010 WL 4807095, at *3 (noting that the question of whether representative parties "may be allowed to present claims on behalf of others who

have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.")

This Court finds the second approach, the "sufficiently similar" standard, to be persuasive.  Representative plaintiffs must demonstrate that the products and/or misrepresentations are sufficiently similarity to establish standing for products they did not purchase.

███████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

  ██████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

The question of whether the same touchpad design defect exists in each of the Class Laptops is a factual dispute and is not proper for resolution at this stage.  Instead, the Court must first determine if Mr. Akhavein's testimony is admissible on this point under FRE Rule 702 and *Daubert*.  If the Court so concludes, then his opinion may be given in support of Plaintiffs' contention that the products are sufficiently similar.  This in turn will allow the Court to find Plaintiffs have the requisite standing to represent the entire class.

i.    Admissibility of Expert Testimony for Standing Determination

Before admitting expert testimony, the Court must initially assess "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 578, 592-93, 113 S.Ct. 2786 (1993).  The trial court has broad discretion in making this initial assessment.  *See, e.g., General Elec. Co. v. Joiner,* 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed. 2d 508 (1997); *United States v. Espinosa,* 827 F.2d 604, 611 (9th Cir.1987) ("The decision to admit expert testimony is

1  committed to the discretion of the district court and will not be disturbed unless manifestly

2  erroneous").

3      ii.  ███████████████████████████

4  ███████████████████████████████████████████████

5  ███████████████████████████████████████████████

6  ███████████████████████████████████████████████

7  ███████████████████████████████████████████████

8  ███████████████████████████████████████████████

9  ███████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 ███████████████████████████████████████████████

12 ███████████████████████████████████████████████

13 ███████████████████████████████████████████████

14    ███████████████████████████████████████████████

15 ███████████████████████████████████████████████

16 ███████████████████████████████████████████████

17 ███████████████████████████████████████████████

18 ███████████████████████████████████████████████

19 ███████████████████████████████████████████████

20 ███████████████████████████████████████████████

21 ███████████████████████████████████████████████

22 ███████████████████████████████████████████████

23 ███████████████████████████████████████████████

24 ███████████████████████████████████████████████

25 ███████████████████████████████████████████████

26 ███████████████████████████████████████████████

27 ███████████████████████████████████████████████

28

09cv2109



However, the Court must also analyze the expert's testimony under *Daubert* standards when offered to support class certification in determining whether the requirements of Fed. R. Civ. P. 23(a) are met. The Court addresses this in **Part B**.

### 3.    California's UCL and CLRA Claims

The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s.]" Cal. Bus. & Prof. Code §17200. Plaintiffs assert violations under the unlawful and unfair prongs of the UCL. (SACC ¶¶ 93, 94 Doc. No. 136.) Proposition 64, approved by California voters on November 2, 2004, amended certain provisions of the UCL. To have standing under the UCL, as well as to serve as a class representative, a plaintiff must plead and prove that he or she "has suffered injury in fact and has lost money or property as a result of" a defendant's unlawful, unfair, or fraudulent business practices. Cal. Bus. & Prof. Code §§ 17203-04; *see In re Tobacco II Cases*, 46 Cal. 4th 298, 326, 326 n. 17, 93 Cal. Rptr. 3d 559,

207 P.3d 20 (2009) ("Tobacco II" ) (Proposition 64 "imposes an actual reliance requirement" under which plaintiffs seeking to represent a class of consumers must "plead and prove actual reliance" on the challenged conduct).

Similarly, under the CLRA, an action may be brought by: "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 . . ." Cal. Civ. Code § 1780(a). The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code §1770 (a). Plaintiffs allege Sony violated the CLRA by representing to consumers that the VAIO laptop have characteristics, uses or benefits that they do not have, and by "[r]epresenting that goods. . . are of a particular standard, quality [when]. . . they are of another." Cal. Civ. Code §1770 (a)(5), (7). To have standing, a plaintiff must allege he or she was damaged by an alleged unlawful practice. *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 638, 88 Cal. Rptr. 3d 859 (2009.) However, causation on a class-wide basis may be established through materiality. *See Mass. Mutual Life Ins. Co. v. Super. Ct*, 97 Cal. App. 4th 1282, 1292–93, 119 Cal. Rptr. 2d 190 (2002) (holding that causation could be satisfied if the record permits an "inference of common reliance" to the class where the information "would have been material to any reasonable person" purchasing the insurance policy) (emphasis added). Thus, if a court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class. A representation is considered material if it induced the consumer to alter his position to his detriment. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129, 103 Cal. Rptr. 3d 83 (2009). Claims under either the UCL or CLRA are governed by the "reasonable consumer" test, which requires plaintiffs to prove that "members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).

In sum, Mr. Glasco must have purchased his VAIO laptop in reliance on Sony's alleged misrepresentations that there were no defects and the laptop was of a certain quality

to have standing for UCL and CLRA claims.  When a misrepresentation is material, a presumption of reliance arises, or at least inferred.  *In re Tobacco II Cases*, 46 Cal.4th at 327.  "A misrepresentation is judged to be 'material' if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action." *Id.*  The Court agrees.  If the touchpad on a new laptop contains a design defect, that fact is certainly something a reasonable person would want to know before purchasing said laptop.  The Court finds Plaintiff Glasco did rely on the VAIO being of a certain quality and without defect.  Accordingly, Plaintiff Glasco has standing to bring UCL and CLRA claims on behalf of the California sub class.

### 4.   New Jersey's Consumer Fraud Act Claims

The New Jersey Consumer Fraud Act prohibits:

> "[t]he act . . . of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, . . . whether or not any person has in fact been misled, deceived or damaged thereby[.]"
> N.J.S. § 56:8-2.

Plaintiffs argue NJCFA does not have a reliance requirement.  (Pls. Mot. 34, Doc. No. 156.)  Plaintiffs rely upon the language of the statute, "whether or not any person has in fact been misled[.]"  Plaintiffs offer case law interpreting the NJCFA as such.  *See In re Mercedes-Benz Tele Aid Contract Litigation*, 257 F.R.D. 46, 74 (D.N.J. 2009).  Rather, Plaintiffs must show that there is a causal nexus between Sony's conduct and Plaintiffs' ascertainable loss.  *Id.*  Plaintiffs do not have to show that but-for Sony's representations and omissions they would not have purchased the laptops, instead, Plaintiffs need only show they did not get full value for their purchase.  *Id.*  Here, Plaintiffs reasonably expected to purchase a laptop with a working touchpad, but the SACC alleges Plaintiffs received laptops with a defective, non-working touchpad.  (SACC ¶¶ 160-162, 165, Doc. No. 136.)  Therefore, Plaintiff Egner, as proposed class representative for the New Jersey subclass, has standing to bring NJCFA claims.

//

### 5.    Breach of Express Warranty Claims

In the SACC, Plaintiffs bring claims against Sony for breach of express warranty. (*Id.* at ¶¶ 117-119.)  The Court questions whether Plaintiffs have standing to bring a claim for breach of express warranty.[4]  Sony's limited warranty states:

> "Sony Warrants this product against defects in material or workmanship for [a period of one year from the original date of purchase].  Pursuant to this Limited Warranty, SONY will, at its option, (i) repair the product using new or refurbished parts or (ii) replace the product with a new or refurbished product."

(Doc. No. 174-6, Ex. A.)  Plaintiffs allege that Sony breached this express warranty but fail to specify how.  The SACC alleges Sony "made statements of fact and promises to plaintiffs and the class that the VAIO notebooks were of merchantable quality and fit for their ordinary use." (SACC ¶ 117.)  Plaintiffs also allege Sony made promises that the laptop would be free of defects or would be repaired or replaced should any part be determined to be defective.  (*Id.* at ¶ 118.)  Finally, Plaintiffs allege that Sony breached the express warranty because of existence of the latent defect that Plaintiffs "took reasonable steps to notify defendants within a reasonable time–and within Sony's one year warranty." (*Id.* at ¶¶ 119-120.)   "Express warranties are treated like any other contract and interpreted according to general contract principles." *Chaurasia v. General Motors Corp.,* 212 Ariz. 18, 22 (2006).  As such the Court considers the actions of both Plaintiffs and Sony to determine if Sony breached the express warranty.

Plaintiff Egner purchased her VAIO laptop on December 11, 2009. (*Id.* at ¶ 30.) On December 20, 2009, Ms. Egner called Sony regarding trouble with her touchpad. (*Id.* at ¶ 32.) On January 29, 2010, a Sony technician replaced the touchpad in Ms. Egner's laptop, but it did not appear to fix the problem. (*Id.* at ¶ 36.) Ms. Egner then shipped her laptop to Sony and Sony replaced an internal cable in an attempt to fix the problem.  (*Id.* at ¶ 40.) Despite Sony's efforts, Ms. Egner continued to have trouble and sent her laptop back to

---

[4]Sony claims it has a unique defense against Plaintiff Egner because she refused a replacement laptop within the warranty period. (Def. Resp. 35, Doc. No. 174.)  The facts giving rise to this unique defense claim caused the Court to question whether these same facts prevent Plaintiff Egner from having standing to bring a breach of express warranty claim at all.  Thus, we consider it here.

Sony on February 19, 2010; however, the Sony technicians found nothing physically wrong with the laptop. (*Id.* at ¶¶ 43-44.) Sony returned the laptop to Ms. Egner informing her that Sony found it to be operating within factory specifications. (*Id.* at ¶ 47.) On March 22, 2010, Ms. Egner was named as a plaintiff in this action against Sony, (First Amended Complaint, Doc. No. 13), and on November 22, 2010, within the one year warranty period, Sony offered to replace Ms. Egner's laptop as part of her express one year limited warranty. (Decl. of John Lowther, Doc. No. 44-1, Ex. 2.) Ms. Egner refused to accept the replacement laptop. (Decl. of John Lowther, Doc. No. 44-1, Ex. 3.)

Plaintiffs assert it was inappropriate for Sony to attempt to "pick off" plaintiff Egner by offering to replace her laptop after suit was filed. *(Id.)* The Court need not reach that question though. The more appropriate question is whether Plaintiff Egner had a breach of express warranty claim when Plaintiffs have failed to allege Sony's inaction as required within the time period of the express warranty.

Sony expressly guarantees it will repair or replace any defect for a one year period from the date of purchase. Plaintiff Egner purchased her laptop on December 11, 2009. From December 20, 2009 until February 19, 2010, Sony made several attempts to repair the problems that Ms. Egner experienced. Sony was not successful in resolving the defect. Within one month of Sony's last attempt, and with over eight months left in the one-year express warranty period, Ms. Egner brought suit for violation of breach of express warranty.

Plaintiff Egner has failed to point to any action or inaction from Sony that was in breach of the express warranty. Just the opposite, Sony continuously attempted to repair and replace malfunctioning parts of Ms. Egner's laptop. Plaintiff Egner has not provided any authority suggesting she is excused from allowing Sony the opportunity to continue to attempt to fix the touchpad during the remainder of the one year period. Sony had performed numerous inspections of Plaintiff Egner's laptop and made several attempts to repair the device, and Plaintiff Egner has not alleged any facts suggesting Sony would not continue to do so. Sony had in fact been attempting, albeit unsuccessfully, to repair and replace defective parts of Egner's laptop.

09cv2109

The Court finds the facts of this case similar to *Baba v. Hewlett Packard Co.,* No. C 09-5946 RS, 2012 WL 5336971 (N.D. Cal. Oct. 26, 2012).  In *Baba,* the plaintiff was experiencing a "crazy cursor" which Hewlett Packard ("HP") had unsuccessfully attempted to fix.  The plaintiff was frustrated with the service she was receiving and felt she was getting the "run around." *Id.* at *8.  Although the court sympathized with plaintiff, it noted HP offered to attempt to fix the problem a second time and even extended the time frame of plaintiff's limited warranty. *Id.*  Similar to Sony in this case, HP was unsure how to fix the problem but maintained its efforts to do so.  "While it is easy to empathize with Baba's palpable dissatisfaction with her HP service experience, she points to no authority that would excuse her from providing HP with a second opportunity to repair the computer." *Id.*  Because Egner fails to allege any evidence that Sony refused to repair or replace her touchpad in her VAIO laptop, she does not have standing to bring the claim. *See id.* at *9.

Similarly, Plaintiff Glasco does not have standing to bring a breach of express warranty claim.  Plaintiff Glasco purchased his VAIO laptop on January 9, 2010.  Around July 16, 2010, Mr. Glasco called Sony's customer service complaining of his touchpad malfunctioning.  (SACC ¶ 53, Doc. No. 136.)  The customer service representative advised Mr. Glasco over the phone on steps to take to resolve the issue.  Whether these actions resolved the problem remains disputed by the parties.  (*Id.*) (*contra* Def. Resp. 36, Doc. No. 174.)  However, there is no dispute that Mr. Glasco did not attempt to have his laptop repaired again, nor in any way notify Sony that he was still experiencing malfunctions of his touchpad.  Without being denied a request to have his laptop fixed under warranty, Mr. Glasco does not appear to have suffered an injury arising from breach of express warranty.  As such, Mr. Glasco does not have standing to bring a breach of express warranty claim.

Neither Plaintiff Egner nor Plaintiff Glasco have standing to bring a breach of express warranty claim.  As such, the Court DENIES certification for the express warranty claims.

**6.    Standing Conclusion**

Based on the above discussion, the Court GRANTS standing to consider class certification of the following two sub-classes: (1) California residents who purchased a Sony

VAIO Laptop, series SZ, FZ, NQ, EB, and F in California[5] between March 16, 2006 and present, bringing claims for violations of UCL, CLRA, Magnuson-Moss Warranty Act, breach of implied warranty, and common counts of assumpsit and declaratory relief, represented by Plaintiff Glasco; and (2) New Jersey residents who purchased a Sony VAIO Laptop, series SZ, FZ, NQ, EB, and F between March 16, 2006 and present, bringing claims for violation of NJCFA, Magnuson-Moss Warranty Act, breach of implied warranty, and common counts of assumpsit and declaratory relief, represented by Plaintiff Egner.

The Court DENIES standing to consider the class certification for the breach of express warranty claims, and on this basis DENIES class certification for the express warranty claims.

**B.    Class Certification**

Plaintiffs seek to certify two subclasses: 1) all purchasers of Class Laptops in California from March 16, 2006 to the present and 2) all purchasers of Class Laptops in New Jersey from March 16, 2006 to the present.

**1.    Legal Standard**

"The class action is 'an exception' to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (citation omitted). "Class action certifications to encourage compliance with consumer protection laws are 'desirable and should be encouraged.' " *Ballard v. Equifax Check Serv.*, Inc., 186 F.R.D. 589, 600 (E.D. Cal.1999) (citations omitted); *see Abels v. JBC Legal Grp.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005) (class action is superior when "[m]any plaintiffs may not know their rights are being violated") (citation omitted).

To obtain certification, a plaintiff bears the burden of proving that the class meets all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and falls within one of the three categories of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657

---

[5] The Song–Beverly Act, relied on by plaintiffs for their breach of implied warranty claims, only applies to goods sold in the state of California. *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1142 (C.D. Cal. 2005), *citing* Cal. Civ. Code § 1792.

F.3d 970, 979–80 (9th Cir. 2011). This case involves Rule 23(b)(3), which authorizes certification when "questions of law or fact common to class members predominate over any questions affecting only individual class members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class.  More importantly, it is not correct to say a district court *may* consider the merits to the extent that they overlap with class certification issues; rather, a district court *must* consider the merits if they overlap with Rule 23(a) require-ments." *Ellis*, 657 F.3d.at 981.  Nonetheless, the district court does not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims." *Id.* at 983 n. 8; *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir.2010) (citation omitted) (court may inquire into substance of case to apply the Rule 23 factors, however, "[t]he court may not go so far ... as to judge the validity of these claims."). When the court must determine the merits of an individual claim to determine who is a member of the class, then class treatment is not appropriate. *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 672–73 (N.D. Cal.2011); 5 James W. Moore, *Moore's Fed. Practice* § 23.21 [3] [c] (2011).

## 2.    Admissibility of Expert Testimony for Class Certification Determination

Before addressing the merits of the certification motion, the court must again consider Sony's challenge under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* to Plaintiffs' expert. 509 U.S. 579, 591, 113 S.Ct. 2786 (1993).  While courts in this circuit have previously concluded that expert testimony is admissible in evaluating class certification without a rigorous *Daubert* inquiry, the Supreme Court in *Dukes* "doubt[ed] that this is so." *Dukes*, 131 S.Ct. at 2554.  After *Dukes*, the Ninth Circuit approved the application of *Daubert* to expert testimony presented in support of or opposition to a motion for class certification. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir.2011) ("In its analysis of Costco's motions to strike, the district court correctly applied the evidentiary standard set

forth in *Daubert* ...").  As a result, this Court applies those standards to the expert reports submitted.

Under Rule 702,

"[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

See also *United States v. Finley*, 301 F.3d 1000, 1007 (9th Cir.2002) ("[Rule 702] consists of three distinct but related requirements: (1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion"); *Sterner v. U.S. Drug Enforcement Agency*, 467 F. Supp. 2d 1017, 1033 (S.D. Cal.2006) ("There are three basic requirements that must be met before expert testimony can be admitted.  First, the evidence must be useful to a finder of fact. Second, the expert witness must be qualified to provide this testimony.  Third, the proposed evidence must be reliable or trustworthy" (citations omitted)).

Before admitting expert testimony, the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786; see also *Ellis*, 657 F.3d at 982 ("Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable").  In conducting this preliminary assessment, the trial court is vested with broad discretion. *See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *United States v. Espinosa*, 827 F.2d 604, 611 (9th Cir.1987) ("The decision to admit expert testimony is committed to the discretion of the district court and will not be disturbed unless manifestly erroneous").

"In determining whether expert testimony is admissible under Rule 702, the district court must keep in mind Rule 702's broad parameters of reliability, relevancy, and assistance to the trier of fact." *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir.1998) (internal quotation marks omitted); *see also Jinro Am. Inc. v. Secure Invests.*, Inc., 266 F.3d 993, 1004 (9th Cir.2001) ("Rule 702 is applied consistent with the 'liberal thrust' of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony" (internal quotation marks omitted)).  On a motion for class certification, it is not necessary for the expert testimony to resolve factual disputes going to the merits of plaintiffs' claim or claims; instead, the testimony must be relevant to determining "whether there was a common pattern and practice that could affect the class as a whole." *Ellis*, 657 F.3d at 983.

//

09cv2109



ii.



But their presence should not preclude the admission of the expert's testimony—they go to the weight, not the admissibility"); *McClellan v. I–Flow Corp.*, 710 F.Supp.2d 1092, 1101 (D.Or. 2010) ([E]stablishing reliability should not mean that plaintiffs "have to prove their case twice—they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable," quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994)).

### 3.    Rule 23(a) Requirements

As noted, a district court can certify a class only if the requirements of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—are satisfied.

09cv2109

In addition, at least one of the prerequisites set forth in Rule 23(b) must be met as well. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

### i. Ascertainable Class

Though not explicitly stated in Rule 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed. *See Lukovsky v. San Francisco*, 2006 WL 140574, at *2 (N.D. Cal. Jan. 17, 2006) A class is sufficiently defined and ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member." *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998); *accord Davoll v. Webb*, 160 F.R.D. 142, 143 (D. Colo.1995); *see also Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 347 (S.D. Ga.1996) ("[T]he 'description of the class must be sufficiently definite to enable the court to determine if a particular individual is a member of the proposed class,'" quoting *Pottinger v. Miami*, 720 F.Supp. 955, 957 (S.D. Fla.1989)).

Plaintiffs' class definition relies on objective criteria that are verifiable through documentation of purchase or Class Laptops during the class period. By cross-referencing their Sony VAIO laptop model or serial number, class members can determine whether they have a Class Laptop. Thus, the proposed class definitions satisfy the ascertainability requirement.

//

//

### ii. *Numerosity*

Under the Federal Rules of Civil Procedure, before a class can be certified, the court must determine that it is "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility, [however,] ... only ... difficulty or inconvenience in joining all members of the class." *Harris v. Palm Springs*

*Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir.1964) (internal quotations omitted). There is no set numerical cutoff used to determine whether a class is sufficiently numerous; courts must examine the specific facts of each case to evaluate whether the requirement has been satisfied. *See General Tel. Co. v. EEOC*, 446 U.S. 318, 329–30, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). "As a general rule, [however,] classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal.1988) (internal citation omitted).

Here, Plaintiffs suggest using sales data of VAIO laptops to establish potential class members. ██████████████████████████████████████████████████████ ████████████████████████████████████████Although Plaintiffs do not provide exact numbers of potential class members, they provide case law suggesting the allowance of some ambiguity in expected size of class. (*Id.* at 23 (*citing Quintero v. Mulberry Thai Silks, Inc.,* 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (providing that classes greater than forty individuals satisfy the numerosity requirement); *Delarosa v. Boiron, Inc.,* 275 F.R.D. 582, 588 (C.D. Cal. 2011) (allowing sales volume to establish numerosity); *In re Abbott Labs. Norvir Anti-Trust Litig.,* 2007 U.S. Dist. LEXIS 44459 at *6 (N.D. Cal. 2007) (finding numerosity is satisfied if common sense indicates the class is large)).) Although some courts have warned that sales volume alone may not always be sufficient to establish numerosity, Plaintiffs outline alternative methods to ascertain potential class members. █████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████ The Court finds that Plaintiffs have established the numerosity requirement.[6]

iii.    Commonality

Commonality requires "questions of law or fact common to the class." See Fed. R. Civ. P. 23(a)(2). The commonality requirement is construed liberally, and the existence of some common legal and factual issues is sufficient. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1320 (9th Cir.1982); *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998) ("The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).)

That said, the putative class's "claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551. Although for purposes of Rule 23(a)(2) even a single common question will do, "[w]hat matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at 2551. As the Ninth Circuit recently articulated by way of example, "it is insufficient to merely allege any common question, for example, '[w]ere Plaintiffs passed over for promotion?' Instead, they must pose a question that 'will produce a common answer to the crucial question why was I disfavored.' " *Ellis*, 657 F.3d at 981 (quoting *Dukes*, 131 S.Ct. at 2552).

//

The central dispute at issue in this class is the nature of the purported defect.

██████████████████████████████████████████████████████████

---

[6]The Court also notes that Defendant Sony has not contested whether Plaintiffs have established numerosity.  (*See* Def. Resp. 25-36 (contesting all requirements of Rule 23 except the23 (a)(1) numerosity requirement.))

09cv2109



The commonality requirement demands only that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full

1   representation of all claims for relief.'" *Wolin v. Jaguar Land Rover North Am., LLC*, 617

2   F.3d 1168, 1172 (9th Cir. 2010).  The fact that some laptops have not manifested the defect

3   is not sufficient, standing alone, to defeat commonality.  *See Keegan v. Am. Honda Motor*

4   *Co., Inc.*, 284 F.R.D. 504, 524 (C.D. Cal. 2012)████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████████

6   ██████████████████████████████████████████████████████████   The   commonality

7   requirement is satisfied.

8        iv.   <u>Typicality</u>

9        Typicality requires a determination as to whether the named plaintiffs' claims are

10  typical of those of the class members they seek to represent. See Fed. R. Civ. P. 23(a)(3).

11  "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of

12  absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020;

13  *see also Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal.1985). Typicality, like

14  commonality, is a "permissive standard [ ]." *Hanlon*, 150 F.3d at 1020. Indeed, in practice,

15  "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*, 457

16  U.S. at 157–58 n. 13, 102 S.Ct. 2364.

17       Defendant disputes typicality for two reasons: (1) Plaintiffs Egner and Glasco did not

18  purchase four of the five series at issue in this action, and (2) Plaintiffs Egner and Glasco

19  will be subject to unique defenses.

20       The Court has already addressed the first issue in the standing analysis and declines

21  to treat the issue as a class certification requirement.  As stated, the Court follows the

22  sufficiently similar standard and finds that if products are sufficiently similar, then the

23  named Plaintiffs may have standing to assert claims for products they did not themselves

24  purchase.

25       Sony also contends the named Plaintiffs are subject to unique defenses compared to

26  the rest of the class.  "To be typical, a class member need not prove that he is immune from

27  any possible defense, or that his claim will fail only if every other class member's claim also

28  fails.  Instead, he must establish that he is not subject to a defense that is '[a]typical of the

defenses which may be raised against other members of the proposed class.'" *Cholakyan v. Mercedes-Benz, USA, LLC,* 281 F.R.D. 534, 556-57 (C.D. Cal. 2012) (quoting *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992)).   However, "[t]o defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial.  If a court determines an asserted unique defense has no merit, the defense will not preclude class certification." *Beck v. Maximus, Inc.,* 457 F.3d 291, 300 (3rd Cir. 2006).   Essentially, to defeat typicality, the defense must be unique to the named representative, and it must have merit.  The Court now considers whether Sony's alleged defenses defeat typicality under Rule 23(a)(3).

> a.   *Plaintiff Egner*

Sony disputes Plaintiff Egner's qualification as a "consumer" for purposes of NJCFA because she purchased and used her laptop for commercial purposes. (Def. Resp. 35, Doc. No. 174.) Sony relies on two cases, however neither provide a definition of "consumer" that would exclude Plaintiff Egner.  In *Specialty Ins. Agency v. Walter Kaye Assocs., Inc.,* the court distinguished between consumers, who were protected under NJCFA, and competitors, who were not protected but sought consumer protection.  1989 WL 120752 at *5 (D.N.J. Oct. 2, 1989).  *Neveroski v. Blair* considers the definition of merchandise that was sold to consumers.  358 A.2d 473, 480 (Super. Ct. App. Div. 1976).   The defense, as outlined by Sony, is unsupported and lacks merit; therefore, it is insufficient to defeat typicality.

1   ████████████████████████████████████ The Court finds no unique defenses

2   raised against Plaintiff Egner.

### b.   Plaintiff Glasco

4   Similarly, Sony asserts Plaintiff Glasco will be subject to unique defenses and

5   therefore cannot satisfy the typicality requirement for class certification.  First, Sony

6   contends that Plaintiff Glasco does not have privity of contract with Sony as required for

7   him to succeed on an implied warranty claim.[7]  (Def. Resp. 36, Doc. No. 174 (citing *Arabian*

8   *v. Sony Elecs., Inc.*, 2007 WL 627977 (S.D. Cal. Feb. 23, 2007); *Anunziato v. eMachines,*

9   *Inc.*, 402 F. Supp 2d 1133, 1141 (C.D. Cal. 2005)).)

10   Whether California law requires privity between an end consumer and the

11   manufacturer in an implied warranty claim, is a complex question.[8]  Breach of implied

12   warranty claims brought under the California Commercial Code require privity; however,

13   those brought under the Song–Beverly Act do not.  *See Clemens v. DaimlerChrysler Corp.,*

14   534 F.3d 1017, 1024 (9th Cir. 2008); *c.f., Ehrlich v. BMW of N. Am., LLC,* 801 F. Supp. 2d

15   908, 921 (C.D. Cal. 2010).  Here, Plaintiffs bring their claim under the Song–Beverly Act.[9]

16   _____

17   [7] Sony also asserts a defense against Plaintiff Glasco's claim of breach of express

18   warranty.  Plaintiff Glasco only called Sony once regarding trouble with his laptop, and Sony asserts the issue was resolved over the phone; Plaintiff Glasco never sent his laptop in for repairs.  Sony believes they are entitled to attempt to repair the laptop before

19   Plaintiffs can recover for breach of express (limited) warranty.  The Court, considering these facts above for standing, need not reach the question on whether they raise a

20   unique defense.

21   [8] Both federal and state courts acknowledge two facts: (1) under the California

22   Commercial Code § 2314, imposing an implied warranty of merchantability in any sale of goods, a plaintiff asserting breach of implied warranty claims must stand in vertical

23   privity with the manufacturer (*Clemens v. DaimlerChrysler Corp.,* 534 F.3d 1017, 1023 (9th Cir. 2008); *Burr v. Sherwin Williams Co.,* 42 Cal. 2d 682, 695-96 (1954);

24   *Anunziato v. eMachines, Inc.,* 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005);) but (2) "the plain language of the Song–Beverly Act. . . [states that] every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the

25   retail seller's implied warranty that the goods are merchantable." (*Gonzalez v. Drew*

26   *Indus.,* 750 F. Supp 1061, 1072 (C.D. Cal. 2007) (internal citations omitted), *citing* Cal. Civ. Code §1792; *accord Ehrlich v. BMW of N. Am., LLC,* 801 F. Supp.2d 908, 921

27   (C.D. Cal. 2010)).

28   [9] Plaintiffs do not specify the Song-Beverly act in the SACC; however, they correctly claim in Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel that breach of implied warranty in California is

(Pls. Mot. 35, Doc. No. 156.)  Other courts, in considering the two statutes noted that, "[w]hile the Song–Beverly Act is similar to the California Commercial Code, the Song–Beverly Act was intended to provide greater protections and remedies for consumers than the Commercial Code.  Thus, [t]o the extent that the [Song–Beverly] Act gives rights to the buyers of consumers goods, it prevails over conflicting provisions of the Uniform Commercial Code." *Ehrlich v. BMW of N. Am., LLC,* 801 F. Supp. 2d 908, 921 (C.D. Cal. 2010) (internal citations omitted), *citing, Mexia v. Rinker Boat Co.,* 174 Cal. App.4th 1297, 1303 (2009); Cal. Civ. Code §1790.3 ("where the provisions of the Commercial Code conflict with the rights guaranteed to buyers of consumer goods under the provisions of this chapter, the provisions of this chapter shall prevail.")  The Court agrees.[10]  Because we find //

that privity is not a requirement for any of the implied breach of warranty claims, asserting lack of privity is not a valid defense, let alone unique.[11]



governed by the Song–Beverly Act. (Pls. Mot. 35, Doc. No. 174.)

[10] This Court is concerned that requiring privity between a manufacturer and a consumer would result in injustice to the consumer.  Consumers often purchase from retailers rather than directly from manufacturers.  Other courts have noted a similar concern.  *See Torres v. City of Madera,* 2005 WL 1683736 (E.D. Cal. July 11, 2005) ("[Requiring privity for express warranties] is absurd and is akin to Ford attempting to avoid liability because a Ford Explorer was purchased through an independent, but exclusive Ford Dealership. Furthermore, the law makes clear that one who supplies a product directly or through a third person for another to use is subject to liability to anyone the supplier should expect to use the product.")

[11] The Court notes the strong likelihood that a significant number of potential class members would have purchased a laptop from a retailer as opposed to directly from the manufacturer.

09cv2109

### v.   Adequacy

Two questions determine whether adequacy exists: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020 (*citing Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978)). The Court will consider conflicts of interest first, then vigorous representation.

//

//

### a.   *Conflict of Interest*

Plaintiffs assert that named Plaintiffs' interests are not in conflict with the unnamed class members and highlight Plaintiffs Glasco's and Egner's commitment to this case as demonstrated by their efforts thus far.[12] (Pls. Mot. 27-28, Doc. No. 156.)

In contrast, Sony argues Plaintiffs are not adequate class representatives. They first attack the named Plaintiffs' credibility. Sony alleges Plaintiff Egner has a criminal history, along with civil charges, that impeach her credibility. (Def. Resp. 15-18, 36, Doc. No. 174.) Similarly, Sony attacks Plaintiff Glasco's credibility by outlining his alleged criminal history. (*Id.* at 17-18.)

---

[12]      Plaintiffs' counsel asserts both Plaintiffs Egner and Glasco have assisted in responding to large amounts of discovery and made themselves available for depositions. (Pls. Mot. 27.)

09cv2109

Although the Court should be concerned with the integrity of named plaintiffs in a class action law suit, that concern is taken in consideration with any conflict of interests. *See In re Computer Memories Sec. Litig.,* 111 F.R.D. 675, 682-84 (N.D. Cal. 1986) ("At oral argument, the [c]ourt questioned all counsel present regarding any potential for personal benefit [Plaintiff] may have by bringing this lawsuit as a class action.  No attorney was able to identify a single benefit to [Plaintiff] that would not be shared by other class members.")

Although Sony correctly asserts "[i]t is within the [C]ourt's discretion to determine that plaintiff is not credible and that as a result certification should be denied[,]" the Court also concludes Sony's allegations against Plaintiffs  are not of a nature to cause prejudice to the unnamed class members.  *See Ellis v. Coscto Wholesale Corp.,* 240 F.R.D. 627, 641 (N.D. Cal. 2007).  As Sony has not identified how either named Plaintiffs' backgrounds creates a conflict of interest, the Court finds it unlikely that said backgrounds make them inadequate class representatives.

Sony also challenges Plaintiffs adequacy by  asserting that Plaintiffs' statements during deposition contradict allegations in the SACC.  (Def. Resp. 37, Doc. No. 174 (*citing Byes v. Telecheck Recovery Servs., Inc.,* 173 F.R.D. 421, 429 (E.D. La. 1997).)  Specifically, Sony asserts these contradictions illustrate that Plaintiffs are not acting independently from their attorneys.  (*Id.* at 38 (*citing Bodner v. Oreck Direct LLC,* 2007 WL 1223777 (N.D. Cal. Apr. 25, 2007); *Byes,* 173 F. R. D. at 427).)  The contradictions referenced by Sony involve: 1) the extent that the computer was still usable with the touchpad malfunctioning; 2) the cost of the computer; 3) how often the touchpad malfunctioned; 4) whom the plaintiffs believed they were representing; 5) time line for choosing to sue; and 6) additional parts or products used when the touchpad malfunctioned.[13]

---

[13] It appears Sony is suggesting that named Plaintiffs should have an understanding of the legal theories.  For example, Sony asserts that Plaintiff Glasco believes that a repair rate of 10% does not constitute a defect.  (Def. Resp. 38, Doc. No. 174.)  The Court dismisses this unreasonable expectation.  Additionally, Sony is taking certain words literally.  For example, Sony points to alleged contradictions in the SACC and Ms. Egner's deposition regarding the frequency of the malfunction; the SACC states there were "constant" problems with the trackpad but in her deposition, Ms. Egner agreed the problems were "spontaneous and intermittent."  (*Id.* at 37 (*citing* Norton Decl., Ex. 3,

In *Jimenez v. Domino's Pizza, Inc.* the court considered a similar challenge and found plaintiffs to be adequate representatives, even though they had inconsistent statements in their declaration and deposition relating to their understanding of the proceedings. 238 F.R.D. 241, 248-49 (C.D. Cal. 2006). In that case, the court found that plaintiffs had "personal experience with the claims of [the] lawsuit and therefore at the least a general familiarity with the case" thereby suggesting no blind reliance on counsel. *Id.* at 249. Because the plaintiffs understood the claims from their own personal experiences and assisted counsel by providing documents and answering questions and maintaining contact with counsel, the court found there was no blind reliance on counsel despite their inconsistent statements. *Id.* Likewise, Plaintiffs Egner and Glasco appear to have a basic understanding of the claims based upon their own personal experiences. Therefore, inconsistent statements referenced by Sony are not enough to render Plaintiffs inadequate.

In conclusion, the Court finds no reason why either named Plaintiff has a conflict of interest and would not be an adequate class representative.

//

//

### b. Vigorous Representation

Under Fed. R. Civ. P. 23(g)(1)(A), when appointing class counsel, the Court must consider: 1) the work done identifying or investigating the claims; 2) counsel's experience in handling class actions and the types of claims asserted in this action; 3) counsel's knowledge of the applicable law; and 4) the resources counsel will commit to representing the class. Plaintiffs contend they are represented by qualified, competent counsel. Plaintiffs emphasize Doyle Lowther LLP and Zeldes & Haeggquist, LLP are both "experienced consumer class action litigators [that] are well qualified to represent the classes." (Pls. Mot. 28.) They highlight the four class action complaints previously filed in this action and

table 3.6).) The Court can imagine a situation where a product may constantly cause intermittent malfunction.

counsel's success in achieving a partial denial of Sony's Motion to Dismiss.  (*Id.*) Additionally, Plaintiffs point to the large amount of discovery, both mounted and responded to, as further evidence of Plaintiffs' counsels' commitment and ability.  (*Id.*)  The Court has no basis for finding Plaintiffs' counsel inadequate.[14]

The Court finds that both named plaintiffs and their counsel will provide adequate representation on behalf of the class.

### 4. **Rule 23(b)(3)**

The Court concludes that Plaintiffs have met Rule 23(a) requirements and now considers whether Plaintiffs meet the requirements to maintain an action under Rule 23(b)(3).  Rule 23(b)(3) requires two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. See Fed. R. Civ. P. 23(b)(3).

### i. <u>Predominance</u>

The predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a). *Amchecm Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).  If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and so the predominance test is satisfied.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) Plaintiffs claim to satisfy the predominance test because "questions of law and fact common to all class members . . .  predominate over any individual issues." (Pls. Mot. 29, Doc. No. 156)  Specifically, Plaintiffs' puts forth questions regarding whether the Class Laptops contained an undisclosed defective touchpad and Defendant Sony's knowledge of the defect.  Consideration of Rule 23(b)(3) "necessarily require an examination of the underlying elements necessary to establish liability for plaintiffs' claims

---

[14] The Court notes Sony, while challenging the adequacy of named Plaintiffs, does not challenge Plaintiffs' counsel.

1   . . . Thus, to satisfy the 'predominance' standard, plaintiffs must show that [all claims] can

2   be proven on a systematic, class-wide basis." *Blades v. Monsanto Co.*, 400 F.3d 562, 569

3   (8th Cir. 2005) (internal citations omitted).   The Court now addresses predominance

4   separately with respect to each of Plaintiffs' claims.

5           a.   *CLRA Claim*

6           The Court has already discussed the standards and requirements of a CLRA claim in

7   discussing Plaintiffs' standing to bring such a claim.   In assessing the predominance

8   standard, the Court notes again that a misrepresentation or omission is material under

9   California law if a reasonable man would attach importance to its existence or non-existence

10  in determining his choice of action in the transaction in question . . . "Consequently, it is

11  generally a question fact . . ." *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157

12  (Cal. Ct. App. 2010).

13  ████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ██████████████████████████

17  ████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████

20  ███████████████████████████████████████████ Under the CLRA, each

21  member in a class action must have an actual injury caused by the unlawful practice;

22  however, causation, on a class-wide basis may be established by materiality if the trial court

23  finds that material misrepresentations have been made to the entire class.   *See Stearns v.*

24  *Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011).   Plaintiffs contend that Sony

25  failed to disclose the existence of the defect to the class.   (Pls. Mot. 32, Doc. No. 156)

26          Whether an omission is material is a fact intensive question that asks "whether a

27  reasonable man would attach importance to its existence or nonexistence . . ." *Keegan*, 284

28  F.R.D. at 531 (quoting *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th, at 157).

1   As a result, to show that Defendant's omission was material, Plaintiffs must demonstrate

2   that the alleged design defect is likely to manifest in the touchpad malfunction. ████████

3   ████████████████████████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████████████████████████

6   ██████████████████████████████████████████████████

7        This Court follows the Ninth Circuit's reasoning in *Wolin v. Jaguar Land Rover*

8   *North Am.* 617 F.3d 1168 (9th Cir. 2010)  In *Wolin,* plaintiffs alleged that their Land Rover

9   suffered from a "geometry defect in vehicles' alignment" which caused premature tire wear.

10  *Id.* at 1170.  Defendant, Land Rover, argued that tire wear was due to individual factors and

11  thus plaintiffs could not establish predominance.  The Ninth Circuit rejected this contention

12  stating "[w]hat Land Rover argues is whether class members can win on the merits.  For

13  appellants' claims regarding the existence of the defect and the defendant's alleged violation

14  of consumer protection laws, this inquiry does not overlap with the predominance test." *Id.*

15  at 1173.  The Ninth Circuit held that while "individual factors may affect premature tire

16  wear, they do not affect whether the vehicles were sold with an alignment defect." *Id.*

17  Following the same reasoning, Plaintiffs in the instant case alleging a design defect may be

18  able to show that the touchpad malfunction is likely to result████████████████████████

19  ████████[15]  A jury is the ultimate fact finder for this inquiry, and if a jury finds the proffered

20  evidence convincing, then materiality would be established because the likelihood of the

21  malfunction would have been material to a reasonable consumer.

22        Moreover, Plaintiffs do not claim that each Class Laptop exhibited the malfunction,

23  rather Plaintiffs allege that the likelihood of a malfunction would have affected the

24  reasonable consumer in making purchasing decision.  Thus, under the CLRA, whether Class

25  Laptops have a likelihood to experience touchpad malfunction, even if the malfunction does

26

27

28        [15] For example, by introducing evidence such as consumer complaints, service bulletins, internal
    reports, and/or expert testimony.

09cv2109

1  not necessarily manifest, will be a question of fact for the jury to determine.  Thus, the Court

2  finds that Plaintiffs have shown predominance as to their CLRA claim.

3            **b.**    *California Unfair Competition Act Claim*

4        Plaintiffs allege that Defendant's practices are unlawful and unfair.  (SACC ¶¶ 93-95,

5  Doc. No. 136) ████████████████████████████████████████████████████████

6  ███████████████████████████████████████████████████████████████████

7  ███████████████████████████████████████████████████████████████████

8  ███████████████████████████████████████████████████████████████████.

9        In light of the common questions identified and the fact that Defendant's alleged

10  actions in violation of the UCL are identical in relation to all consumers of the Class

11  Laptops, the Court finds that Plaintiffs establish predominance for the UCL claim.

12            **c.**    *New Jersey Consumer Fraud Act Claim*

13        The New Jersey Consumer Fraud Act ("NJCFA") states in part " The act . . . of

14  deception, fraud, false pretense, false promise, misrepresentation, or the knowing,

15  concealment, suppression, or omission of any material fact with intent that others rely upon

16  such [act], in connection with the sale or advertisement of any merchandise . . . whether or

17  not any person has in fact been misled, deceived or damaged thereby, is declared to be an

18  unlawful practice[.]" N.J.S.A. 56:8-2 (defining unlawful acts).  Plaintiffs break down the

19  elements of NJCFA 56:8-19, which outlines action or claims by injured persons, as such:

20  "(1) unlawful conduct on the part of Sony, (2) an ascertainable loss on the part of plaintiffs,

21  and (3) a causal relationship between the unlawful conduct and the ascertainable loss." (Pls.

22  Mot. 33, Doc. No. 156 (*citing In re Mercedes-Benz Tele Aid Contract Litig.,* 257 F.R.D. 46,

23  73 (D.N.J. 2009).)  Much like the UCL and CLRA, Sony's alleged conduct under the

24  NJCFA will be the same with regard to all class members, and therefore is subject to

25  common proof.  As alleged above, Plaintiffs assert that Sony both misrepresented the quality

26  and abilities of the NW series Laptops and omitted the material fact that the laptops had a

27  defective touchpad.  Plaintiffs argue the purchase of a defective Sony VAIO Class Laptop

28  constitutes an ascertainable loss for each class member, a requirement for entry into the

class, making the second element subject to common proof as well.  (Pls. Mot. 34, Doc. No. 156.)  Plaintiffs finally allege that because the NJCFA does not require reliance, causation can also be subject to common proof in that class members did not get full value for their purchase.[16]  (*Id.*)  The Court finds the NJCFA subject to common proof and that common issues predominate.

                d.   *Breach of Implied Warranty Claims*

"The Magnuson–Moss Warranty Act codified at 15 U.S.C. §§ 2301–2312, et seq., provides that a consumer may assert a civil cause of action to enforce the terms of an implied or express warranty."  *Keegan,* 838 F.Supp. 2d at 954.  And, "calls for the application of state written and implied warranty law, not the creation of additional federal law."  *Id.*  (*citing In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation,* 754 F. Supp. 2d 1145, 1188 (C.D. Cal. 2010); *Daugherty v. American Honda Motor Co., Inc.,* 144 Cal. App. 4th 824, 833 (2006).  The federal statute creates the cause of action, but Plaintiffs must demonstrate that California and New Jersey law governing breach of implied warranty are subject to common proof. //

In doing so, Plaintiffs rely on Cal. Civ. Code Section 1792 (the Song-Beverly Act), and N.J. Stat. Ann.§ 12A:2-314.[17]  Under both statutes, the implied warranty of merchant-ability is breached if the product is defective or not fit for its ordinary, intended purpose. *See Montich v. Miele USA Inc.,* 849 F. Supp. 2d 439, 453-455 (D.N.J. 2012) (considering both the Song–Beverly Act and N.J. Stat. § 12A:2-314)  (*citing In re Toshiba America HD DVD Marketing and Sales Practices Litig.,* No. 08-939 (DRD), 2009 WL 2940081 (D.N.J., September 11, 2009)).  For purposes of considering whether common proof is appropriate

---

[16] Presumably, Plaintiffs are noting the analysis in *Mercedes-Benz*: "the [NJCFA] requires only a causal nexus between the 'method, act, or practice declared unlawful' and the consumer's 'ascertainable loss.'" 257 F.R.D. 46, 74 (*citing Varacallo v. Massachusetts Mut. Life Ins. Co.,* 332 N.J. Super. 31, 48 (2000)).

[17] Plaintiffs also note that there is no conflict between the two states' statutes.  (Pls. Mot. 35 (*citing Montich v. Miele USA, Inc.,* 849 F. Supp. 2d 439, 455 (D.N.J. 2012).)

to the cause of action, the Court considers both California and New Jersey breach of implied warranty at the same time. Common sense indicates a purchaser's ordinary, intended purpose for a laptop is personal computing and also indicates a mouse or cursor is generally necessary to access the laptop's programs. Therefore, whether the alleged defect existed and caused the product to be unfit for its ordinary, intended purpose would be identical across all class-members and subject to common proof.

Sony filed a Supplemental Authority in Opposition to Motion to Certify Class and Appointment of Class Representatives and Class Counsel (Doc. No. 193.) Sony directed the Court's attention to a recently decided case *Daniel v. Ford Motor Co.,* 2013 WL 3146810 (E.D. Cal. June 18, 2013). In *Daniel,* the court found that breach of implied warranty claims were not subject to common proof. Citing *Wolin,* the court held that damage caused by a defect to establish a breach of warranty do not easily satisfy the predominance test. *Daniel,* 2013 WL 3146810, at *6 (*citing Wolin,* 617 F.3d at 1174). The court acknowledged that *Wolin* was referring to breaches of express warranty but still found the analysis appropriate because "driving habits, failure to properly maintain the vehicle, and other actions by a vehicle's owner can cause premature tire wear." *Id.* This Court declines to follow *Daniel.* There is a significant difference between how a driver operates a car and how a user navigates a laptop. As the court in *Daniel* observed, a driver's actions including maintenance and how they physically operate the vehicle can have significant impact. Conversely, laptops are unlike cars in their need for regular maintenance, and the habits of one laptop user compared to another are unlikely to cause significant physical damage. The Court finds that Plaintiffs' claims for breach of implied warranty are subject to common proof and do not create individual questions and will certify the implied warranty claims for class treatment.

e. *Defendant's Objections*

In Sony's objections, it outlines individual questions that arise and make class certification inappropriate, including which class members suffered harm and damages;

1   whether individual class members attempted to have the laptops repaired;[18] the manner in
2   which the laptops were being used; which class members relied; how the different states
3   laws will be handled; and finally, which class members qualify as "consumers." (Def.
4   Resp.31, 38, Doc. No. 174.)

          *i.      Individual questions of damage*

6        Sony first argues Plaintiffs have not made a demand for damages or proposed a
7   method for measuring them on a class-wide basis. (Def. Resp. 31, Doc. No. 174.)  This
8   argument is problematic for several reasons.  First, Plaintiffs make quite clear that they seek
9   "non-defective replacement touchpads and/or new laptops" on behalf of the class.  (Pls.
10  Reply 13, Doc. No. 184.)  Second, Plaintiffs suggest Sony's sales data will provide any
11  information needed to determine the proper amount of damages or restitution.[19]   (*Id.*)
12  Finally, Plaintiffs provide case law bolstering their position that "[t]he amount of damages
13  is invariably an individual question and does not defeat class action treatment." (*Id.* (*citing*
14  *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir. 1975)).)

15       The Court finds Circuit Judge Posner's opinion and analysis in *Butler v. Sears,*
16  *Roebuck and Co.* persuasive. 2013 WL 4478200 (7th Cir. Aug. 22, 2013).  In reconciling
17  the Supreme Court's requirement in *Comcast Corp. v. Behrend,* 133 S.Ct. 1426 (2013), that
18  a damage suit must allege damages resulting from a class-wide injury, to a class action
19  products liability certification, Judge Posner writes that "[it] would drive a stake through the
20  heart of the class action device, in cases in which damages were sought . . . to require that
21  every member of the class have identical damages."  *Id.* at *5.  Like the *Bulter* class, "there
22  is no possibility in this case that damages could be attributed to acts of the defendants that
23  are not challenged on a class-wide basis." *Id.* at *3.  Plaintiffs have brought forth an action
24  that attributes damages on a class-wide basis to the same alleged acts committed by Sony.

25

26          [18] Sony asserts that each class member must show that Sony did not attempt to
    repair the laptop for Plaintiffs to succeed on warranty claims.  (Def. Resp., p. 32.)
27
          [19] Plaintiffs do not expressly state why sales data will provide the proper damage
28  amounts, but the Court infers Plaintiffs mean damages will be determined by the
    ordinary cost of a new laptop or touchpad.

1    As a result, the Court finds damages will be measurable on a class-wide basis and are

2    not subject to individual questions such that predominance is defeated.

3                    *ii.    Individual questions regarding repairs*

4    Sony asserts that "Plaintiffs' warranty-based claims will turn on whether the

5    purchaser sought repair for undesirable cursor behavior[.]" (Def. Resp. 32, Doc. No. 174)

6    Sony claims they have a right to a reasonable number of repair attempts under California

7    Law. (*Id.* at 32 n.21.) As support, Sony points to *Robertson v. Fleetwood Travel Trailers*

8    *of Cal., Inc.,* in which the court held "[i]n order to prevail in a claim under Song–Beverly

9    Act, one of the elements a plaintiff must prove is that the good 'was presented to an

10   authorized representative of the manufacturer ... for repair.'" 144 Cal. App. 4th 785, 805

11   (2006) (*citing Oregel v. American Isuzu Motors, Inc.,* 90 Cal. App. 4th 1094, 1101 (2001)).[20]

12   Plaintiffs respond to Sony's argument by pointing to *Mexia v. Rinker Boat Co., Inc.* In

13   *Mexia,* the court noted "[n]or is there any requirement that the buyer allow the seller or

14   manufacturer an opportunity to repair the product prior to bringing an action for breach of

15   the implied warranty of merchantability." 174 Cal. App. 4th 1297, 1307 (2009) (*citing*

16   *Mocek v. Alfa Leisure, Inc.,* 144 Cal. App. 4th 402, 406-7 (2003)).

17   //

18   The Song–Beverly Act governs claims for breaches of express and implied warranties.

19   Cal. Civ. Code §§ 1791, *et seq*. (implied warranties); Cal. Civ. Code §§ 1793, *et seq*.

20   (express warranties). The cases cited by Sony all address repair attempt requirements for

21   breach of express warranty. Whereas the cases cited by Plaintiffs address claims for breach

22   of implied warranty. The Song–Beverly act may require a reasonable number of repair

23   attempts before a plaintiff may bring a breach of express warranty claim, but it does not

24   have the same requirement for a breach of implied warranty claim. See Cal. Civ. Code §§

25

26

27   [20] The Court in *Robertson* noted "[t]he buyer shall deliver nonconforming goods to
     the manufacturer's service and repair facility within this state, unless, due to reasons of
     size and weight, or method of attachment, or method of installation, or nature of the
28   nonconformity, delivery cannot reasonably be accomplished." 144 Cal. App. 4th 785,
     805 (*citing* Cal. Civ. Code Section 1793.2 (c)).

1791.1, 1794.  As Plaintiffs only have standing to bring a breach of implied warranty claims, the Court finds that there is no repair-attempt requirement necessary.

### iii.    Individual questions of use

Sony also asserts that there are individual questions of whether the product was being used for its ordinary purpose.  (Def. Resp. 32. Doc. No. 174)  In this regard, Sony makes only a cursory statement without providing any additional explanation or support for its objection.  (*Id.*)  The Court finds Sony's objection unpersuasive.  Generally, the purchasers of personal computers would expect them to function in an ordinary manner and use them for ordinary purposes.  As such the Court finds that individual questions of use will not predominate.

### iv.    Individual questions of reliance

Sony also objects to predominance and argues reliance creates individual questions that will predominate over any common questions among the class. Sony states "[n]umerous cases have denied class certification on predominance grounds because of lack of reliance where the evidence showed that the named plaintiffs or class members did not rely on the alleged statements at issue."  (*Id.* at 33.)

Sony points to *Webb v. Carter's Inc.*, as an example of reliance being an individual question.  272 F.R.D. 489 (C.D. Cal. 2011).  In *Webb,* the court states: "[c]ausation as to each class member is commonly proved more likely than not by materiality.  Thus, where material misrepresentations are made, at least an inference of reliance would arise as to the entire class.  However, where individual issues as to materiality predominate, the record will not permit such an inference."  *Webb,* 272 F.R.D. at 501–502 (internal citations omitted).  Sony misses the key fact that the defendant in *Webb* put forth a great deal of evidence indicating that materiality would be an individual question.  Essentially, had consumers known of the defect in *Webb*, it may or may not have altered the buying decision.  Here, Sony has put forth no similar evidence.  The Court will apply the reasonable person standard, generally accepted for determining materiality.  *See id.* (*citing, In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310–11 (N.D. Cal.2008)) ("In general, both

1   of these elements—that the plaintiffs would have been aware of the disclosure and that they
2   would have decided not to buy the garments—are proven with reference to a "reasonable
3   consumer" standard.")   As stated previously, in alleging a design defect, Plaintiffs may be
4   able to show that the touchpad malfunction is likely to result from████████████████████
5   ██████████.  A jury is the ultimate fact finder for this inquiry, and if a jury finds the proffered
6   proof convincing, then materiality would be established because the likelihood of the
7   malfunction would have been material to a reasonable consumer.   This is an inquiry
8   improper during the class certification stage, as such predominance has not been defeated
9   by questions as to individual reliance.

10                      *v.    Individual issues resulting from choice of law*

11          Sony also asserts there are significant differences between California and New Jersey
12   law that prevent common questions of law from predominating.  (Def. Resp. 33, Doc. No.
13   174.)  Specifically, Sony argues: (1) the CLRA and UCL of California have no scienter
14   requirement while NJCFA does; (2) the UCL and CLRA require the demonstration of
15   reliance while New Jersey does not; and (3) California warranty laws require privity for
16   implied warranty while New Jersey law does not.  (*Id*. 33-34.)

17          Sony also objects to Plaintiffs' failure to present a trial plan that addresses how the
18   Court will instruct a jury on the different laws of two states.  (*Id.* at 39.)  The Court declines
19   to follow Sony's suggestion that Plaintiffs are required to submit jury instructions on this
20   issue at this stage.  Additionally, the Court's reading of the three cases Sony relies on is

21
22
23
24
25
26
27
28

09cv2109

materially different than Sony's representation[21]  Putting the alleged failure to provide jury instructions aside, Defendant has failed to explain how this case will be unmanageable beyond cursory assertions.

In contrast, Plaintiffs argue the two sub-classes sufficiently manage the different States' laws.  (Pls. Reply 11-12, Doc. No. 184.)  Each sub-class is represented by an appropriate named plaintiff and the respective state law will be applied to that sub-classes claims.  Under these circumstances, the Court finds the case easily manageable as the state law is clear cut.  *See Tait v. BSH Home Appliances Corp.,* 289 F.R.D. 466, 470 (C.D. Cal. 2012) (certifying four sub-classes for claims arising from four states and their respective laws).  Accordingly, the Court finds there are no individual questions of state law that make this class certification unmanageable.

*//*

_____

[21] Sony states that no jury instructions have been proposed and no trial plan has been provided.  Sony asserts that both are necessary to show manageability of applying the law from multiple jurisdictions.  (Def. Resp. 39, Doc. No. 156.) Sony points to three cases in claiming that Plaintiffs have a duty to provide jury instructions.  The court in *In re Rhone Poulenc Rorer, Inc.,* did not find difficulty with instructing a jury on two different states' law as Sony would have us believe in their parenthetical stating "even differences of 'nuance' in state law would make instructing the jury unmanageable." (Def. Resp. 39.)  Rather, the court in *In re Rhone Poulenc Rorer, Inc.* found that the jury must be given instructions *at trial* that were based on actual law rather than instructions " in accordance with no actual law of any jurisdiction. . . merging the negligence standards of the 50 states and the District of Columbia." 51 F.3d 1293, 1300 (7th Cir. 1995).  In *Lyon v. Caterpillar, Inc.,* the court expressed concerns that plaintiffs' counsel had not adequately discussed various states' applicable laws that were expected to arise in the suit.  Plaintiffs' counsel was granted opportunity to file supplemental briefing outlining the specifics of each claims brought in each state.  Plaintiffs' counsel submitted supplemental briefing however, the court found that " [p]laintiff's only attempt at providing the court with a state-by-state analysis of consumer fraud acts is in the proposed jury instructions attached to plaintiff's supplemental memorandum. Plaintiff's effort is exceedingly far from 'thorough and comprehensive.' " 194 F.R.D. 206, 220-21 (E.D. Pa. 2000).  However, Sony would lead this Court to believe that *Lyon* "den[ied] certification where plaintiffs did not propose jury instructions that adequately addressed variations in state law." (Def. Resp. 39, Doc. No. 174.)  Finally, Sony relies on *In re 8 Stucco Litig.,* "citing plaintiffs' lack of sample jury instructions as a reason for denying class certification." (Def. Resp. 39.)  This is patently incorrect.  The court did not deny class certification for lack of jury instructions but rather because of differences in 44 state laws.  *In re 8 Stucco Litig.,* 175 F.R.D. 210, 216-217 (E.D. N.C. 1997) ("Plaintiffs provide no detail on the exact nature of the differences in state law. Moreover, while they indicate that jury instructions can be crafted to accommodate the differences in law, no sample instructions are provided. The court thus has some concern about how it would handle variations in state negligence law.")

vi.     *Individual Questions of qualification as "consumer"*

Lastly, Sony objects to predominance based on individual questions of which class members will qualify as "consumers." (Def. Resp. 38, Doc. No. 174.)  However, Sony fails to provide any detail or support for this assertion.  (*Id.*)  As discussed above with regard to Plaintiff Egner's typicality, Sony has failed to point to any authority defining "consumer" or requiring a definition of consumer, such that it raises an individual question.  Assuming for sake of discussion that class members must be the purchaser of the laptop, the Court still fails to see how this one question predominates over the many others.  As such, the Court finds that individual questions of qualification as a "consumer" will not predominate and therefore do not defeat class certification.

Sony fails to bring up any individual questions that will predominate over common questions.  As such, the Court finds common questions predominate over individual questions and class certification under Rule 23(b)(3) is appropriate.

ii.    <u>Superiority</u>

"Under Rule 23(b)(3), the court must evaluate whether a class action is superior by examining four factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in a particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 992 (C.D. Cal. 2006) (quoting *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 469 (N.D. Cal. 2004)).

Plaintiffs have satisfied their burden of demonstrating predominance for an action under consumer protection laws with two subclasses, California and New Jersey residents, and implied warranty claims.  Defendants focus on how issues in determining who qualifies as a consumer and the application of laws of different jurisdictions necessarily defeat superiority.

//

42

The Court notes that absent adjudication on a class basis, plaintiffs must pursue their claims individually. In addition, the central question regarding the Class laptops is, is there a design defect in the touchpad? Resolving this issue, one way or another, for hundreds of thousands of VAIO computers sold since 2006, adds great economy of scale favoring class action treatment.  A class action is superior to individual actions with respect to the implied warranty claims.  The cost of repairing or returning a defective laptop is too small to incentivize class members to litigate claims individually. *See Amchem Products*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

Although the CLRA, unlike the UCL, permits recovery of both actual damages and punitive damages, *Anunziato v. eMachines*, Inc., 402 F.Supp.2d 1133, 1137 (C.D. Cal.2005), litigation costs would likely "dwarf potential recovery." *Hanlon*, 150 F.3d at 1023.  Further, the burden on the judiciary would be significant and unnecessary, given the existence of questions common to each potential plaintiff's claim.  While there are differences between California and New Jersey law with regards to reliance, by dividing class members into separate subclasses, the Court can fashion appropriate evidentiary and remedial standards to address any differences.  Thus, the Court concludes that the superiority requirement is met.

## III. CONCLUSION

For the reasons stated, the Court certifies the following two classes:

>   (1) California residents who purchased a Sony VAIO Laptop, series SZ, FZ, NQ, EB, and F in California between March 16, 2006 and present, for claims of violations of UCL, CLRA, Magnuson-Moss Warranty Act, breach of implied warranty, and common counts of assumpsit and declaratory relief; and

>   (2) New Jersey residents who purchased a Sony VAIO Laptop, series SZ, FZ, NQ, EB, and F between March 16, 2006 and present, bringing claims for violation of

NJCFA, Magnuson-Moss Warranty Act, breach of implied warranty, and common counts of assumpsit and declaratory relief.

The Court also notes that this case now requires scheduling up to and including trial. Based thereon, counsel for the parties are ordered to meet and confer on final scheduling, no later than October 31, 2013. Counsel are further ordered to file  a joint case management plan no later than November 15, 2013 addressing the following:

A.    Any remaining issues regarding fact or expert discovery;

B.    The anticipated timing, the nature and the number of any dispositive motions that will be filed;

C.    The desired timing for the Final Pretrial Conference and the trial;

D.    Counsel's estimates of the length of trial;

E.    The subjects that Counsel propose be addressed in separate phases of the trial, if any;

F.    The specific ways in which differences among available remedies will be addressed in special verdict forms at trial; and

G.    The specific mechanisms Counsel suggest for handling the damages phase of the trial.

The Court will hold a Case Management Conference on December 5, 2013 at 2:00 PM in Courtroom 3B.


IT IS SO ORDERED.


DATED:  September 25, 2013

_____

Hon. Anthony J. Battaglia
U.S. District Judge

09cv2109