# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD FLYNN, individually and on behalf of all other similarly situated, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>SONY ELECTRONICS, INC., *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 09-cv-2109-BAS(MDD)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR APPROVAL OF CLASS NOTICE PROPOSAL**<br><br>**[ECF No. 219]** |

　　　On September 25, 2009, Plaintiffs Ronald Flynn commenced this putative class action alleging that Defendant Sony Electronics, Inc. manufactured and sold defective notebook computers under the VAIO brand name from January 1, 2007 to the present. Plaintiffs Thad Nation, Christina Egner, and Rickey Glasco were later added to this lawsuit. Now pending before the Court is Plaintiffs' motion for approval of the class-notice proposal.

　　　The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' class notice proposal.

I.  **BACKGROUND**[1]

On September 25, 2013, two classes were certified and defined as:

> (1) California residents who purchased a Sony VAIO Laptop, series SZ, FZ, NQ, EB, and F in California between March 16, 2006 and present, for claims of violations of UCL, CLRA, Magnuson-Moss Warranty Act, breach of implied warranty, and common counts of assumpsit and declaratory relief; and
>
> (2) New Jersey residents who purchased a Sony VAIO Laptop, series SZ, FZ, NQ, EB, and F between March 16, 2006 and present, bringing claims for violation of NJCFA, Magnuson-Moss Warranty Act, breach of implied warranty, and common counts of assumpsit and declaratory relief.

(September 25, 2013 Order 43:22–44:2.)

Plaintiffs hired Kurtzman Carson Consultants to disseminate and administer the proposed notice plan. (Pls.' Mot. 5:12–15.) Plaintiffs' consultant estimates that there are 436,892 class members in California and New Jersey. The firm plans to reach approximately 38.86% of the class through individualized notice and 43.04% through notice by publication for a total of 81.9% of the class. (Rosenthal Decl. ¶¶ 14, 18.) The target of 80% was made in light of the Federal Judicial Center's Judges' *Class Action Notice and Claims Process Checklist and Plain Language Guide* setting a "reach standard" of 70-95%. (Rosenthal Supplemental Decl. ¶ 4.)

Plaintiffs propose a combination of direct and indirect methods to notify class members. The notices consist of a short-form and long-form notice that is modeled off of the Federal Judicial Center's notices, and the parties agree on the form, content, and distribution plan with two exceptions. (Pls.' Mot. 3:3–8.) Plaintiffs will send direct notice to 143,792 identified class members in the form of an email containing a summary of the litigation and a link to the case website, and then again by mail for all email bouncebacks for which a postal address is known. (*Id.* at 4:8–15.) Defendant does not object to this method. (Def.'s Opp'n 3:3–8.)

//

---

[1] Mr. Flynn as well as Defendants Best Buy Co., Inc. and Best Buy Stores, L.P. have since been dismissed from this action.

For class members that Defendant does not have contact information, Plaintiffs propose notice by publication in *People* magazine, the *Los Angeles Daily News*, Facebook text ads, a case-specific Facebook site, a case website with information about the litigation, and an internet banner on several thousand websites. (Pls.' Mot. 5:5–7:21.) Defendant objects to the proposed publication in *People* magazine as to the New Jersey class members as well as the proposed case-specific Facebook page. (Def.'s Opp'n, 3:3–8.)

## II. LEGAL STANDARD

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hannover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice must state clearly and concisely, in plain language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(b). The purpose of this notice is to protect a class members' due-process rights by affording them the opportunity to opt out of the action. *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 757 (9th Cir. 2010) vacated on other grounds, 132 S. Ct. 741 (2011). The district court has wide discretion in fashioning the proposed notice. *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 145, 168 (2d Cir. 1987).

## III. DISCUSSION

As a preliminary matter, the Court finds that the substance of these notices satisfies the requirements under Rule 23(c)(2)(B). Specifically, the Court approves of the short-form and long-form notices in Exhibits 1 and 2 attached to Plaintiffs' motion.

Additionally, Plaintiffs must add the phrase "in CA & NJ" to the internet banner advertisements, should space allow, per the parties' agreement from the meet-and-confer process. (Def.'s Opp'n 3 n.1.)

The parties agree to the class-action-notice plan in regards to direct notification, but are in disagreement with some aspects of the proposal's notice by publication. Defendant objects to the use of the New Jersey edition of *People* magazine and to the creation of a case-specific Facebook page. The Court considers these proposed methods of notice in turn.

### A. New Jersey *People* Magazine Publication

Defendant argues that Plaintiffs' proposed publication in the New Jersey state edition of *People* magazine is overbroad because it reaches residents of states who are not included in the class. (Def.'s Opp'n 4:3–5.) The Court disagrees and finds that this notice is not overbroad.

Defendant states that courts have rejected requests for overbroad publications when local publications would suffice. *See Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 64 (D. Conn. 2001). In *Macarz*, the defendant opposed the plaintiff's proposed notice plan because of the considerable time and cost borne by the defendant to create a list of the class members to mail, and because 25% of the mailed letters would go to members who are not in the class. *Macarz*, 201 F.R.D. at 60–61. That court held that because 25% of the mailings would be sent to non-class members the notice was overbroad, would confuse recipients, and would encourage inquiries by non-class members. *Id.* at 64.

*Macarz* is factually distinguishable from this case. In *Macarz*, the cost of forming the list and the fact that 25% of it would include non-class members were the main issues the defendant had with the plaintiff's proposed notice plan. *See Macarz*, 201 F.R.D. at 60. The *Marcarz* defendant had the responsibility for paying for the notice, but presently Plaintiffs bear the cost of notice. The difference in monetary

burdens is important.

Further, the issue here is the broadness of the notice by publication, whereas in *Macarz*, the defendant objected to the individualized notice as being overbroad. This distinction is significant because it is clear that mailing a notice of a class action directly to a non-class member would likely lead to inquiries by non-class members. In contrast, a non-class member seeing a publication about a class action seems much less likely to inquire about the class. In this case, it seems even less likely that a non-class member would inquire upon seeing the publication because the short-form notice clearly delineates, in the title and in a bold box, that it applies only to California and New Jersey residents. (Pls.' Mot. Ex. 1.) The Court finds that *Macarz* is distinguishable from the present case, and thus, it fails to provide adequate legal authority to reject the publication proposal at issue.

Defendant also contends that Plaintiffs should demonstrate that publications local to New Jersey are not effective or available. (Def.'s Opp'n 4:5–6.) However, Plaintiffs only need to show that the proposed notice, under all the circumstances, is reasonably calculated to apprise interested parties of the pending action and provide an opportunity to opt out. *Mullane*, 339 U.S. at 314. Plaintiffs meet this burden in regards to the notice publication in the New Jersey edition of *People*. *See id.*

Plaintiffs state *People* magazine was chosen for its large subscription base, common usage in class-action notice, and its correlation among laptop owners. (Pls.' Mot. 6:1–8.) Under the present circumstances, the *People* publication is not overbroad because *People* reaches 23.3% of California and New Jersey Sony Laptop Owners. (Rosenthal Decl. ¶ 15.) Additionally, *People*'s readers are 8.1% more likely to be a California or New Jersey Sony Laptop Owner compared to those states' general population. (*Id.*) This is sufficient to justify using *People* over a local New Jersey publication.

//

//

The New York Metro Area edition of *People* covers New Jersey, ten counties in New York, and a county in Pennsylvania. (Rosenthal Supplemental Decl. ¶ 8.) However, simply because the publication reaches residents outside of the Class does not necessarily mean that the notice is overbroad. *See Tylka v. Gerber Products Co.*, 182 F.R.D. 573, 578 (N.D. Ill. 1998) (holding that notice published in newspapers in six bordering states would be reasonable even though the class was comprised solely of Illinois residents). For example, it is reasonable to believe that New Jersey class members commute to these nearby counties for work or leisure and pick up a copy of *People* outside of New Jersey. *See id.* Additionally, because 23.7% of *People*'s circulation consists of single-copy sales with 12 readers per copy, it is entirely reasonable to believe that New Jersey class members who buy and subsequently read *People* do so outside of New Jersey. (Rosenthal Supplemental Decl. ¶ 9.) The notice also lessens the possibility of inquiries by non-class members because the title and a bold box clearly state that the action only applies to California and New Jersey residents. (Rosenthal Decl. Ex. 1.)

In sum, the Court approves the proposed publication in the New Jersey edition of *People* because it is reasonably calculated, under all the circumstances, to apprise New Jersey class members of the pending action. *See Mulane*, 339 U.S. at 314.

### B.   Case-Specific Facebook Page

Plaintiffs also propose a case-specific Facebook page to allow class members to receive updates related to the litigation. (Pls.' Reply 7:19–24.) Defendant argues that the case-specific Facebook page does not comply with the purpose of notice and that it is overbroad. (Def.'s Opp'n 5:6–16.) The Court agrees with Defendant because the proposed Facebook page is not aligned with the purpose of the notice requirement.

//

//

//

The purpose of the class-action-notice requirement is to apprise class members of the action and give them the opportunity to opt out. *Wang*, 623 F.3d at 757; *Zeisel v. Diamond Foods, Inc.*, C10-01192 JSW, 2011 WL 4551473, at *1 (N.D. Cal. Oct. 3, 2011). In contrast, Plaintiffs' reason for the proposed Facebook page is to allow class members to become "friends" or "like" the page so that they can receive updates and posts related to the litigation. (Pls.' Mot. 7:16–19.)

Furthermore, the case-specific Facebook page would only update and inform class members who were already notified of the action and decided to not opt out because it would be difficult for a class member to be aware of the case-specific Facebook page in the first place without having first being aware of the litigation through other means. This is because the link embedded in the emails, internet banners, and Facebook text ads all lead to the main case website and not the case-specific Facebook page. (*See* Pls.' Mot. 7:11–14.)  Additionally, because the case-specific Facebook page is not advertised or published anywhere, to receive notice from the case-specific website the class member would likely have to actively seek the case-specific page. (*See id.*) Class members actively searching for notice is not what was intended by requiring notice in a class action. *See Wang*, 623 F.3d at 757.

Because a class member will only be aware of the case-specific Facebook page after being notified of the action, Plaintiffs' proposed case-specific website does not comply with the purpose of class-action notification. Therefore, the Court does not approve of the case-specific Facebook page.

## IV. CONCLUSION & ORDER

In light of the trial court's discretion and the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for approval of class notice proposal. Notice approved by this Court shall be provided to the class by:

(1) Individualized email containing a summary of the litigation and a link to the case website;

  (2) Individualized mail containing the short-form notice;

  (3) A case-specific website with the long-form notice;

  (4) Four eighth-page short-form notices once a week for four consecutive weeks in the *Los Angeles Daily News*;

  (5) A Short-form notice the California and New Jersey editions of *People*; and

  (6) Internet banner ads and Facebook text ads geographically targeted to California and New Jersey that include the phrase "in CA & NJ."

The Court also **DENIES** Plaintiffs' request for approval of notice using a case-specific Facebook page.

**IT IS SO ORDERED.**

**DATED: January 7, 2015**

*[signature: Cynthia Bashant]*

**Hon. Cynthia Bashant**
**United States District Judge**