UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: SONY VAIO COMPUTER NOTEBOOK TRACKPAD LITIGATION | Case No. 09-cv-2109-BAS(MDD)<br>09-cv-2603-BAS(MDD)<br><br>**ORDER GRANTING UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[ECF No. 375]** |

In 2009, Plaintiffs commenced this class action alleging defects in the touchpads of five different series of Sony VAIO laptops—specifically, the SZ, FZ, NW, EB and F series. Now pending before this Court is Plaintiffs' unopposed motion for final approval of class action settlement. (ECF Nos. 375, 376.) The matter came on for hearing on August 7, 2017. The Court has considered the Settlement Agreement and Release filed on December 30, 2016 ("Settlement" or "Settlement Agreement"), oral and/or written objections and comments received regarding the proposed Settlement, the record in the above-entitled lawsuits ("the Action"), and the arguments and authorities of counsel. For the reasons stated below, the Court **GRANTS** this motion. (ECF No. 375.)

## I. BACKGROUND

### A. Allegations in the Complaint

In the Second Amended Complaint ("SAC"), Plaintiffs assert that there was a defect in the touchpad of the Sony VAIO laptops that caused the onscreen cursor to "(a) track in reverse, *e.g.*, the cursor moves in a direction opposite to the user's input; (b) freeze or fail to register user input; or (c) engage in erratic behavior, *e.g.*, randomly open and close windows and programs[.]" (SAC ¶ 2, ECF No. 136.)

Plaintiffs assert Defendant Sony Electronics, Inc. ("Sony") knew or should have known of the defect but continued to market and sell the VAIO computers without informing consumers of the existence of the defect. (SAC ¶¶ 4, 58-60.) Plaintiffs claim Sony misrepresented the VAIO laptops to provide "the best experience possible, [with] uncompromised performance." (*Id.* ¶ 18.) Sony also made statements in the express limited warranty that the VAIO laptops would be "free against defects in material or workmanship for one year from the original date of purchase . . . [and] it would repair or replace with new or refurbished product or parts, any product or parts determined to be defective." (*Id.* ¶ 118.)

Sony denies the allegations that the touchpad of the Sony laptops had any defect. (Settlement § 5.1.) Sony maintains the five series VAIO Notebooks at issue are not and were not defective, and that the "repair and re-repair rates [were] so miniscule for the five series at issue that the case cannot be characterized as a defect case." (Def.'s Non-Opp'n 8:5-7, ECF No. 376.) Sony stopped selling the SZ and FZ series in 2009, the NW series in 2010, and most of the EB and F series in 2011, with a few lingering sales in 2012. (*Id.* at 8:14-16.)

### B. Procedural History

This case was the consolidated result of two separate cases. Named plaintiffs substituted out and in, and eventually resulted in the consolidated Second Amended Complaint. (ECF No. 136.) The case was vigorously litigated for nearly eight years.

(Declaration of Deborah S. Dixon in Support of Motion for an Order Granting Final Approval of Class Action Settlement ("Dixon Decl. Final") ¶ 2, ECF No. 375-2.)

The Court granted in part Plaintiffs' motion for class certification, certifying for class purposes two classes defined as:

> (1) California residents who purchased a Sony VAIO Laptop, series SZ, FZ, NQ, EB and F in California between March 16, 2006 to the present, for claims for violations of UCL, CLRA, Magnuson-Moss Warranty Act, breach of implied warranty, and common counts of assumpsit and declaratory relief;   and
>
> (2) New Jersey residents who purchased a Sony VAIO Laptop, series SZ, FZ, NQ, EB and F in New Jersey between March 16, 2006 and the present, for claims of violations of NJCFA, the Magnuson-Moss Warranty Act, breach of implied warranty, and common counts of assumpsit and declaratory relief.

(ECF No. 198.) Sony sought but was denied permission to file an interlocutory appeal from this order. (ECF No. 205.)

After nearly five hours of oral argument, the Court denied in part Sony's Motions for Summary Judgment and Decertification of the Class. (ECF No. 331.) Less than two weeks before trial, with the Final Pretrial Order, Proposed Voir Dire, Motions *in Limine*, and Proposed Verdict Forms on file, the parties reached a settlement in principle. (ECF No. 361.) It took three more months to finally reach a joint motion for preliminary approval. (ECF No. 366.)

## II.   PROPOSED SETTLEMENT

The proposed Settlement Agreement affirms the classes already certified by the Court in its earlier order. The Settlement provides for four classes of cash payments:

(1) 65% of documented out-of-pocket expenses incurred to repair the touchpad, up to a cap of $200;

(2) 65% of documented out-of-pocket expenses incurred to purchase a peripheral workaround [*i.e.*, purchase of a mouse] because of purported touchpad issues, up to a cap of $60;

(3) $25 for any Class Member who experienced touchpad issues but does not have proof of repair or a workaround; or

(4) $5 for any Class Member who does not meet any of the above criteria. (Settlement § 2.1.[1])

Class Members submitting a valid and complete Claim Form will receive a check, which they have 180 days to negotiate, after which the funds will be returned to Sony. (Settlement § 3.5-3.6.)

Following final court approval of the proposed Settlement, Plaintiffs and Settlement Class Members shall be deemed to have released and discharged Sony from any and all claims "that have or could have been alleged in the…Complaint, including but not limited to, any and all claims related to the design, manufacturing, sales and performance under any express or implied warranty related to Sony VAIO, SZ, FZ, NW, EB and F series laptops." (Settlement at § 4.4.)

## III. ANALYSIS

### A. Fairness

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, Federal Rule of Civil Procedure 23(e) "require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

---

[1] The Settlement is attached as Exhibit 1 to the Declaration of Deborah S. Dixon in Support of the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Dixon Decl. Preliminary"). (ECF No. 366-2.) All capitalized terms in this Order shall have the same meaning as set forth in the Settlement. (*See* Settlement § 1 (Definitions)).

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. A court may not "delete, modify or substitute certain provisions" of the settlement; rather, "[t]he settlement must stand or fall in its entirety." *Id.*

Relevant factors to this determination include, among others, "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class-action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026; *see also Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). In determining that this Settlement is fundamentally fair, adequate, and reasonable, the Court has considered each of those factors as discussed below.

### 1. Strength of Plaintiffs' Case and Risk of Further Litigation

Plaintiffs allege that the Sony VAIO Laptops were defective and that Sony knew or should have known of this defect. Sony, however, vigorously denies any wrongdoing or liability. (Dixon Decl. Preliminary ¶ 19.)

The Parties agree that the uncertainty of any result at trial together with "the attendant risks, difficulties, and delays inherent in litigation, especially in complex actions such as this" warrants settlement "[d]espite vigorous opposition on both sides." (Dixon Decl. Final ¶ 3.) The Court concurs. This settlement eliminates litigation risks and ensures that Class Members receive some efforts to undo the damage they claim was done. On balance, the strength of Plaintiffs' case and the risk of further litigation favor approving the proposed settlement.

//
//

### 2. Consideration Offered

Class Members will receive compensation between $5 and $200, depending on the expenses they incurred and their ability to document these expenses. Members might be entitled to greater compensation, but this does not mean that the settlement is inadequate. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). "[The] very essence of a settlement is a compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). Under the circumstances, the Court concludes that the consideration offered in the Settlement Agreement is sufficient for approval.

### 3. Extent of Discovery Completed and Stage of Proceedings

This case has been vigorously litigated for eight years. The parties have engaged in extensive discovery (not to mention discovery disputes), including production of almost 100,000 documents, and more than twenty-one depositions, including eight of expert witnesses. (Dixon Decl. Preliminary ¶ 16.) The parties engaged in extensive *Daubert* motions "on highly technical and complicated manufacturing, engineering and damages issues." (*Id.*) The extensive motion practice culminated in a five-hour oral hearing discussing the validity of class certification, Sony's motion for summary judgment, and the various expert witnesses. (ECF No. 331.) This case was set for trial two weeks before a settlement was reached. The parties were well into trial preparation at the time of the settlement. (Dixon Decl. Preliminary ¶ 24.) Finally, the parties had engaged in at least two mediation sessions with the Honorable Edward A. Infante (retired), which eventually assisted in the conclusion of a settlement agreement. (*Id.* ¶¶ 13, 25; Dixon Decl. Final ¶ 8.) This factor weighs heavily in favor of approving the Settlement Agreement.

//
//

### 4. Experience and Views of Counsel

As laid out in their Declarations, the Class Counsel are experienced in class action lawsuits, having lead or participated in numerous class action lawsuits in state and federal courts. (Dixon Decl. Preliminary ¶¶ 4-13, Ex. 2.) Class Counsel conclude that "the proposed settlement is fair, reasonable and adequate with respect to Plaintiffs and the certified class." (*Id.* ¶ 14.)

Generally, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *cf. Stull v. Baker*, 410 F. Supp. 1326, 1332 (S.D.N.Y. 1976) (holding that the court should consider the recommendation of counsel, and weight it according to counsel's caliber and experience). Here, due especially to the experience and knowledge of Class Counsel, their recommendations are presumed to be reasonable, and this factor accordingly favors approval.

### 5. Reaction of the Class Members to the Settlement

Class Counsel maintains that the class has approximately 400,000 members. (Dixon Decl. Final ¶ 6.) Almost 140,000 of those received direct notice via either email or a postcard through the U.S. mail. (McComb Decl. ¶¶ 1-6, ECF No. 375-5.) Publications, a website, and a toll-free number attempted to provide notice to the remaining class members. (*Id.* ¶¶ 7-9.) The Class Administrator received 1,766 valid and timely filed claim forms.[2] (*Id.* ¶ 10.)

Out of the Class, only two individuals, neither of whom were members of the Class, requested exclusion. (McComb Decl. ¶12; Dixon Decl. Final ¶ 6.) Only one Class Member objected to the Settlement. (McComb Decl. ¶ 12.) The one objector objected because of the requirement that he provide proof of purchase to obtain the $25 in Category 3. (Dixon Decl. Final ¶ 6.) Class Counsel asked him if he had any

---

[2] At oral argument, Plaintiffs' counsel represented that another 1452 claims may be validated despite some technical deficiencies in the form.

other documentation of purchase including a photograph with his laptop in it, but he did not. (*Id.*) This objector, however, still qualified for a claim under Category 2, under which he was qualified to receive $18, which was 65% of the cost of a mouse he purchased as a peripheral device. (*Id.*) He agreed to submit for this amount, which was only $7 less than he would have received with a proof of purchase. (*Id.*)

Although the number of claimants is low, the Court finds the very limited negative reaction from Class Members supports approval of the Settlement Agreement.

### B. Notice

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule directs:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975).

In this case, the Class Administrator, KCC Class Action Services, LLC ("KCC"), emailed notice to 133,792 Class Members, which were all the Class Members for whom the parties had email addresses. (McComb Decl. ¶ 4.) KCC

received 17,543 bounce-backs from these emails, but were able to locate mailing addresses for 14,276 of these, so postcards were sent through U.S. mail to these individuals. (*Id.* ¶ 5.) Additionally, KCC mailed postcard notices to 11,258 individuals, which were all the Class Members for whom the parties had addresses but no email addresses. (*Id.* ¶ 3.) From the mailed postcards, KCC had 3,970 notices returned without forwarding addresses, but found updated addresses for 1,645 of these individuals and remailed the postcards. (*Id.* ¶ 6.)

Besides the email and postal notices, KCC published notice in periodicals as well as via the internet, as approved by the Court in its Order Approving Preliminary Settlement. (McComb Dec. ¶ 7; *see also* ECF No. 366.) Additionally, the Class Administrator maintained a website and toll-free telephone number that has provided information about the case and the settlement. (McComb Decl. ¶¶ 8-9.)

The Court previously approved the form and manner of Notice to the class members. (ECF No. 366.) The Court now finds the Class Notice program was executed as previously detailed in its Order. Hence, the Court finds the class notice satisfies due process.

## IV. CONCLUSION & ORDER

For the reasons stated both in this Order as well as its previous Order Granting Preliminary Approval of the Class Action Settlement, the Court **GRANTS** the parties' Joint Motion for Final Approval of Class Action Settlement. (ECF No. 375.)

The Court **ORDERS** as follows:

1. The Judgment incorporates by reference the definitions in the Settlement, including its exhibits, and all terms used herein shall have the same meanings as set forth in the Settlement;

2. The Court has jurisdiction over the subject matter of this Action and all Parties to the Action, including all Settlement Class members;

//

3. Pursuant to Rule 23(c)(3) of the Federal Rules of Civil Procedure, all persons who satisfy the Class definition approved by the Court in its Order Certifying the Class (ECF No. 198), except those Class Members who timely and validly excluded themselves from the Settlement Class, are Settlement Class Members bound by this Judgment.

4. The Court certifies Christina Egner and Rickey Glasco as Class Representatives.

5. Having considered the factors set forth in Rule 23(g)(1) of the Federal Rules of Civil Procedure, the Court finds that Gomez Trial Attorneys, Doyle Lowther LLP and Zeldez Haeggquist & Eck, now known as Haeggquist and Eck, have fairly and adequately represented the Class for purposes of entering into and implementing the Settlement, and, thus, confirms these attorneys as Class Counsel for the Settlement Class;

6. In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, the Claims Administrator caused the Class Notice to be disseminated as ordered. The Class Notice advised Class Members of the terms of the Settlement, of the Final Approval Hearing, and their right to appear at such hearing, of their rights to remain in or opt out of the Settlement Class and to object to the Settlement, procedures for exercising such rights, and the binding effect of this Judgment to the Settlement Class;

7. The distribution of the Class Notice constituted the best notice practicable under the circumstances, and fully satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process, 28 U.S.C. § 1714, and any other applicable law;

8. The Settlement proposed by the parties is fair, reasonable and adequate. The terms and provisions of the Settlement are the product of lengthy, arms-length negotiations conducted in good faith and with the assistance of the Honorable Edward A. Infante (Ret.). Approval of the Settlement will result in substantial savings of time,

money and effort to the Court and the parties, and will further the interests of justice;

9. No Class Members have timely or validly submitted requests for exclusion from the class. Therefore, all Settlement Class Members are bound by this Judgment and by the terms of the Settlement;

10. The Court awards attorney's fees, costs, and an incentive service award to the named Plaintiffs and Class Counsel as set forth in the Court Order submitted simultaneously with this Order;

11. The Court dismisses with prejudice the Action and all released claims set forth in Sections 4.3 and 4.4 of the Settlement Agreement;

12. Without affecting the finality of this Judgment, the Court reserves jurisdiction over the implementation, administration and enforcement of this Judgment and the Settlement;

13. There is no just reason for delay in the entry of this Final Judgment and Order approving Settlement and immediate entry by the Clerk of the Court is expressly directly pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

**DATED: August 7, 2017**

Hon. Cynthia Bashant
United States District Judge